**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| JOHN ANDROS, JULIE ANDROS, ) | |
| KINGS PARKWAY, LLC d/b/a ) | |
| 67 MOTORS, and IDEAL TRANSPORT, ) | |
| LLC ) | CIVIL ACTION NO. |
| ) | |
| Plaintiffs, ) | JURY TRIAL DEMANDED |
| ) | |
| v. ) | |
| ) | |
| STEPHEN TINSLEY, individually and ) | |
| as the Sheriff of Clinch County, Georgia ) | |
| APRIL TINSLEY, individually and as ) | |
| Deputy Sheriff of Clinch County, ) | |
| Georgia, and NATIONAL INSURANCE ) | |
| CRIME BUREAU, INC. ) | |
| ) | |
| Defendants. ) | |

_____

**COMPLAINT**

**COME NOW**, John Andros, Julie Andros, Kings Parkway, LLC d/b/a 67 Motors, and Ideal Transport, LLC, Plaintiffs in the above-styled action, and file this Complaint, showing this honorable court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     John Andros and Julie Andros are citizens and residents of Clinch County, Georgia.  Kings Parkway, LLC d/b/a 67 Motors ("67 Motors") and Ideal Transport, LLC are Georgia limited liability companies, with their principal places of business located in Homerville, Clinch County, Georgia.

2.     Defendant Stephen Tinsley is a citizen, resident, and the Sheriff of Clinch County, Georgia.  Upon information and belief, he may be served with process at 115

Court Square, Homerville, Georgia 31634.

3.      Defendant April Tinsley is a citizen, resident, and a duly sworn, P.O.S.T. certified law enforcement officer with the Clinch County Sheriff's Department. Upon information and belief, she may be served with process at 115 Court Square, Homerville, Georgia 31634.

4.      Defendant National Insurance Crime Bureau ("NICB") is an Illinois corporation. Through what it designates as its "special agent", Trent Van Lannen, it was heavily involved in the illegal search and seizure which is the subject of this lawsuit. It is a private insurance company funded entity and may be served with process through its registered agent, C.T. Corporation, 289 S. Culver Street, Lawrenceville, Georgia 30046.

5.      The events giving rise to this action occurred in Colquitt County, Georgia and Clinch County, Georgia. This is in the Middle District of Georgia for Federal Civil Rights Actions. There are federal questions involved between the Tinsleys and the Plaintiffs, and diversity between the Plaintiffs and NICB.

6.      This Court has jurisdiction over the claims asserted by Plaintiff pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, 28 U.S.C. § 1367, in that certain claims alleged by Plaintiff arise under federal law or are so related to Plaintiffs' claims arising under federal law that they form part of the same case or controversy.

7.      Venue is proper for this action as most events giving rise to this action occurred in Colquitt County, Georgia and Clinch County, Georgia.

## FACTUAL ALLEGATIONS

8.      On Sunday, August 27, 2023, Defendant April Tinsley signed affidavits to support

petitions for search warrants to search the home of Plaintiff John Andros and wife Julie, the office of 67 Motors, and the office of Ideal Transport.  Ideal Transport and 67 Motors were owned by Plaintiff John Andros.

9.     The probable cause affidavits signed by Defendant April Tinsley contained the following statement:

> While the mere possession of a document detailing an acquisition, transfer, transport, sale or disposition is not in itself evidence that Andros knowingly and willingly did such with the white 2020 Chevrolet Silverado 2500, VIN #1GC4YME70LF125606, the fact that Andros failed to transmit the sale to Georgia's Electronic Title Registration system is evidence that he knew the vehicle was likely stolen.  Further, affiant believes that documentation contained therein will likely indicate this was not an isolated incident.

10.    This sworn statements by Defendant April Tinsley stands in direct contradiction with the Georgia Department of Revenue's Mandatory ETR Bulletin, attached hereto as Exhibit "A," which states in relevant part:

"ARE THERE ANY TRANSACTIONS THAT SHOULD NOT BE PROCESSED THROUGH ETR"

Certain transactions are not processed through ETR.  These include transactions that (are) titled in the dealer's names.

These transactions will continue to be processed directly through the County Tag Office, rather than through the ETR".

(See Exhibit "A").

11.    67 Motors' title on the 2020 Chevrolet Silverado should not have been recorded through ETR.  This fact was, and still is, well known in the automobile industry in Georgia (See Exhibit "B" - Affidavit of Lehman Franklin, board member of Georgia Automobile Dealers Association).  Mr. Franklin states "because the

vehicle was never sold to a private individual in this scenario, it was never required to be registered through the Georgia ETR.  To say it was, is just wrong."

12.     Defendant April Tinsley clearly misrepresented this to the Court, despite this information being easily accessible and available to her prior to executing her probable cause affidavits.  (Exhibit "A" was easily obtainable online through the Georgia Department of Revenue website).

13.     The items included in the search warrants by Defendants April Tinsley and Stephen Tinsley were overly broad and failed to particularly describe many of the items/articles eventually confiscated.  In the end, the warrants were quashed as being improperly granted based upon factual/legal misstatements and the fact that Defendants clearly exceeded the scope of the warrants of August 27, 2023.  Therefore, no items which were seized were legally seized.

14.     Prior to executing any of the search warrants, Defendants and their agents unplugged all security cameras on Plaintiff's properties, which was not permitted by the search warrants.  Defendant Stephen Tinsley also told an employee of Plaintiff 67 Motors that if she would turn over Plaintiff's cell phone pass codes, he would not seize any documents pursuant to the search warrants.  This demonstrates Defendants' malicious intentions as to Plaintiffs.

15.     During the course of the seizure of property, Stephen Tinsley told a number of people John Andros was actively engaged in the business of changing VIN numbers to engage in the sale of stolen vehicles.  This is absolutely untrue and constitutes slander.

- 4 -

16.    Several items seized by Defendants, including but not limited to communication devices, guns, boxes and titles to cars, were not logically related to the items and/or articles listed in the search warrants, and Defendant maintained possession of such items well beyond a reasonable amount of time.

17.    The Court has since quashed the search warrants, ruling that there was no probable cause to search or seize any of Plaintiff's possessions, that Defendant even exceeded the search warrants in seizing various item/articles unrelated to the suspected stolen vehicle, and that all property seized was to be returned instanter.  The Court also ruled that, "[a]lthough the Search Warrants were related to a stolen vehicle," Defendants seized many unrelated items and articles, including personal records of John and Julie Andros, medications, a gun, and several enclosed boxes.

18.    As a result of Defendants seizing and maintaining possession of books, records, communication devices and titles to cars, Plaintiffs have suffered injuries.  This is in addition to the damages otherwise pled.

**CAUSES OF ACTION AND DAMAGES AS TO DEFENDANTS APRIL TINSLEY AND STEPHEN TINSLEY, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**
**(Violations of 42 USC §1983)**
***Intentional Infliction of Emotional Distress; Conversion***

19.    Plaintiffs re-allege and incorporates herein each and every allegation of the preceding paragraphs.

20.    At all times relevant to this action, Defendants April Tinsley and Stephen Tinsley were employed by the Clinch County Sheriff's Office and were acting under the color of the law as duly sworn law enforcement officers.

21.     In being a volunteer deputy Sheriff for her husband, April Tinsley was operating as an agent of Sheriff Stephen Tinsley.  Her acts were taken on behalf of Sheriff Stephen Tinsley and he is responsible for April Tinsley's acts in filing an affidavit here in support of the warrants of August 28, 2023.

22.     The warrant affidavits contain false statements made with reckless disregard for the truth knowingly or with a reckless disregard for the truth.  Therefore, the warrant affidavits, as found by the Court, never could establish probable cause.

23.     Stephen Tinsley knew, at the time he employed his wife to head up the Andros investigation, April Tinsley had, on numerous occasions, misrepresented matters involved in official investigations with which she was in charge.

24.     Defendant Stephen Tinsley allowed April Tinsley to free-wheel in her investigation of 67 Motors, despite the fact that he knew or should have known she had been listed on the Georgia Peace Officer Certification website as "terminated".  And, further, that she had been accused of fabricating parts of investigations by the Georgia Department of Drugs and Narcotics.

25.     Defendant April Tinsley knew Sheriff Tinsley had a propensity to abuse his office. She had reported such to the Ben Hill County Sheriff's Department in early 2017. Specifically, she stated then United States DEA Agent Tinsley threatened to open a DEA investigation unless she returned his "badge, work identification and equipment."  This kind of threat is *per se* illegal from a DEA agent.

26.     Defendants April Tinsley and Stephen Tinsley were reckless and/or callously indifferent to the constitutional rights of Plaintiffs John and Julie Andros by submitting what they did or should have known to be false affidavits.  These

affidavits were prepared to obtain search warrants for various properties owned by Plaintiffs, seeking clearly overbroad search warrants.  The affidavits signed by April Tinsley lacked the minimal requirements of stating the sought after items/articles with particularity.  The Defendants exceeded the scope of the search warrant by seizing and maintaining control of numerous items/articles not covered by the search warrants.  By seizing control of hundreds of items to which they had no right, the Tinsley Defendants are liable for conversion under Georgia law.

27.  Clear evidence of the malicious actions done by Defendants is that they were involved in turning off the Plaintiffs' security cameras at the beginning of the illegal search.  This was not covered by the search warrant and, therefore, it was impermissible.  The clear inference is Defendants knew they were crossing the line and did not want a record of it.

28.  Defendants' actions involving the submission of deficient warrant affidavits and the unlawful searches and seizures of Plaintiffs' properties, items, and articles, and the retention of such seized items violated Plaintiffs' Fourth and Fourteenth Amendment rights.  Given the clear violation of the law by the Tinsley's, their actions constitute an intentional infliction of emotional distress under Georgia law.

29.  As a direct and proximate result of Defendants' actions, Plaintiffs have suffered injuries and damages, including extreme anguish, pain, and suffering.

30.  Plaintiff 67 Motors has suffered serious loss of business as a result of Defendants' actions, especially the wrongful retention of illegally seized items that prevented

Plaintiffs from conducting business.

31.    Ideal Transport, whose offices were also raided pursuant to the improper

warrants of August 27, 2023, suffering a substantial loss of business.

32.    In breaching Plaintiffs' civil rights, the Tinsley Defendants are also liable for

attorney's fees pursuant to 42 USC § 1988 as well as costs and attorneys fees

under O.C.G.A. §13-6-11 (all Defendants).

**CAUSES OF ACTION AND DAMAGES AS TO DEFENDANT NATIONAL
INSURANCE CRIME BUREAU ("NICB")**
**(Negligence, Gross Negligence, Intentional Infliction of Emotional Distress)**

33.    Plaintiffs re-allege and incorporates herein each and every allegation of the

preceding paragraphs.

34.    Defendant NICB is a private company from Illinois, put together by large

insurance companies to combat fraud.

35.    It has been conclusively determined, by Order of the Superior Court of the

Alapaha Judicial Circuit, that no improper acts were properly shown to the Court

to support a warrant for the search and seizure of property belonging to the

Plaintiffs.  This illegal search and seizure occurred on August 28, 2023.

36.    NICB was active in this illegal search and seizure, through its "special agent"

Trent Van Lannen.  In fact, Van Lannen was not an official special agent of any

policing organization, as he inferred.

37.    Van Lannen became involved in the matter in Moultrie, Georgia.  He knew or

should have known the warrants he was helping with were defective, because, as

the Court concluded in rescinding the warrants of August 27, 2023, it was based,

among other defects, upon a false premise that the Silverado pick-up truck (VIN

#1GC4YME70LF125606) had to be registered with the Georgia Electronic Title Registration system.  This fact was wrong.

38.  Van Lannen, at all times relevant, was acting as an agent of NICB, and with NICB's knowledge and consent, represented himself to be an official officer executing this warrant.  He was not an official, even though he tried to give himself that imprimatur with the NICB as a special agent executing what turned out to be bogus warrants.

39.  Van Lannen assisted on August 28, 2023 with the execution of the illegal warrant. Having assumed this position, Van Lannen had a duty to read the warrant.

40.  He failed to properly read the warrant, did not acquaint himself with the facts to understand he was engaged in an illegal search, and/or disregarded the fact that he was engaging in an unlawful search and seizure.  The whole warrant was void as it was based upon false information.

41.  Van Lannen's actions were intentional, but if not, at least reckless.

42.  The unlawful entry onto another's property, the seizure of items, articles, and other pieces of property is extreme and outrageous such that it terrified, insulted, humiliated, and/or embarrassed the Andros Plaintiffs.

43.  As a direct and proximate result, Plaintiffs John and Julie Andros were and remain severely distressed by Van Lannen's actions and continue to suffer injuries and damages as detailed below.  Since Van Lannen was a willing participant in the improper search and seizure, he is liable for all of damages pled above and hereafter to the respective Plaintiffs.

## **DAMAGES**

44.  The defendants entered the Andros property and seized many items and articles pursuant to illegal warrants. All of the Defendants' actions have caused and still cause John and Julie Andros physical and emotional distress as well as distinct pecuniary losses.

45.  These Plaintiffs further have had to expend attorneys fees and expenses in excess of $110,000.00 to defend themselves in what the Court of the Alapaha Circuit has termed to be illegal warrants. They should be compensated for this, plus interest on these monies.

46.  Pursuant to 42 U.S.C § 1988, Plaintiffs should be compensated for their attorneys fees in this action from the Tinsley's.

47.  The acts of NICB in aiding with illegal search warrants were intentional, malicious, and done in bad faith, therefore, properly subject it to exemplary damages, costs and attorneys fees under Georgia law (O.C.G.A. §§ 13-6-11; 51-12-5.1).

48.  The execution of the illegal warrant against Plaintiff 67 Motors has badly damaged business with its customers in Homerville and Valdosta in the industry as a whole. As of several weeks ago, sales are off in excess of $207,450.00. These damages are ongoing. Defendants are responsible for these ongoing damages from lost sales.

49.  Plaintiff Ideal Transport has lost business directly attributable to Defendants' wrongful acts in excess of $60,000.00, as of several weeks ago. These damages are ongoing. Defendants are responsible for these ongoing damages.

50.    The execution of the illegal warrant against Plaintiffs caused Plaintiffs to lose a building in Tifton, Georgia they were to purchase for their business, resulting in additional costs of $40,000.00 for the purchase of a different building and lease payments.  Defendants are responsible for these damages.

51.    Additionally, in order to respond to the warrant and do business when your records you needed were illegally seized, Plaintiffs have spent more than $111,000.00 in the aggregate in payroll for things its employees did not need to be working on.  Additionally, by seizing titles and other related matters, these damages are ongoing.  Defendants are liable for these ongoing damages.

## **PRAYER FOR RELIEF**

WHEREFORE, having set forth his Complaint against Defendants, Plaintiffs pray for the following relief:

A.    That summons and process issue and be served upon Defendants, and Defendants be required to answer this Complaint;

B.    That judgment be entered in favor of Plaintiffs;

C.    That Plaintiffs be awarded an appropriate sum to compensate for their injuries and damages;

D.    That Plaintiffs be awarded attorney's fees and all costs of litigation pursuant to O.C.G.A. §13-6-11 (Defendant NICB) and 42 U.S.C. §1988 (Tinsley Defendants);

E.    As to Defendant NICB, Plaintiffs be awarded exemplary damages;

F.    For trial by a jury comprised of twelve persons; and

G.    That Plaintiffs recover such other and further relief as this Court deems

just and proper.

This 5th day of December, 2023.

**_/s/ Brent J. Savage_**
Brent J. Savage
Georgia Bar No. 627450

Savage, Turner, Pinckney,
Savage & Sprouse
Post Office Box 10600
Savannah, GA 31412
(912) 231-1140
bsavage@savagelawfirm.net
lhatcher@savagelawfirm.net

**_/s/Sam D. Dennis_**
Sam D. Dennis
Georgia Bar No. 218315

SAM D. DENNIS, P.C.
1107 N. Patterson Street
P.O. Box 1865
Valdosta, Georgia 31603-1865
(229) 244-4428

_Attorneys for Plaintiffs_
