IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

JOHN ANDROS, *et al.*,        :
                              :
        Plaintiffs,           :
                              :        CASE NO:
    v.                        :        7:23-cv-135 (WLS)
                              :
STEPHEN TINSLEY, *et al.*,    :
                              :
        Defendants.           :
_____     :

## ORDER

Before the Court are the following motions to dismiss Plaintiffs' Third Amended Complaint (Doc. 40) ("Third Amended Complaint"'):

1.    Motion to Dismiss of Defendant April Tinsley (Doc. 41) ("April Tinsley's Motion");

2.    Motion to Dismiss Plaintiffs' Third Amended Complaint by Stephen Tinsley (Doc. 45) ("Sheriff Tinsley's Motion"); and

3.    Defendant National Insurance Crime Bureau's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 44) ("NICB's Motion").

The above motions to dismiss are referred to collectively as the "Motions to Dismiss." Plaintiffs' amended responses in opposition (Docs. 78, 80, 79) to the Motions to Dismiss and Defendants' amended replies (Docs. 81, 82, 84) thereto were timely filed. Upon full review and consideration of the record, the Motions to Dismiss, amended responses, and amended replies thereto, and for the reasons set forth below, the Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART**.

## I.    PROCEDURAL BACKGROUND

On December 6, 2023, Plaintiffs John Andros, Julie Andros, Kings Parkway, LLC d/b/a 67 Motors ("67 Motors"), and Ideal Transport, LLC ("Ideal Transport") filed a complaint (Doc. 1) against Deputy Sheriff April Tinsley ("April Tinsley"), Stephen Tinsley ("Sheriff Tinsley"), the Sheriff of Clinch County, Georgia, and the National Insurance Crime

Bureau, Inc. ("NICB").[1] Sheriff Tinsley and Deputy Sheriff April Tinsley are husband and wife and are referred to collectively as the "Tinsley Defendants." NICB and the Tinsley Defendants are referred to collectively as "Defendants." 67 Motors and Ideal Transport are Georgia limited liability companies owned by John Andros. 67 Motors is a used car dealership.

On February 2, 2024, Plaintiffs filed a first amended complaint (Doc. 13) in which they attempted to incorporate by reference the allegations contained in their original complaint (Doc. 1). In this district, an amended complaint completely replaces the original complaint. Thus, Plaintiffs were ordered to refile the first amended complaint to include all allegations and causes of action Plaintiffs intended to assert against all Defendants. On February 14, 2024, Plaintiffs filed their second amended complaint (Doc. 15) which was merely a compilation, as ordered by the Court, of their original complaint and first amended complaint.

On May 17, 2024, Plaintiffs timely moved to amend their second amended complaint to add factual allegations obtained during Sheriff Tinsley's deposition to the effect that Sheriff Tinsley was aware that April Tinsley had previously made false accusations to law enforcement officers. The Tinsley Defendants responded that they did not oppose the motion to amend, but denied the additional allegations. NICB did not file a response and the Court granted the motion. On June 12, 2024, Plaintiffs filed the operative Third Amended Complaint (Doc. 40), in which they allege 1983 Civil Rights Actions against the Tinsley Defendants and allege various state law claims against the Tinsley Defendants and NICB.

The filing of the Third Amended Complaint mooted Defendants' motions to dismiss that were pending at that time. (*See* Doc 39). Therefore, the Defendants filed the present Motions to Dismiss, after which Plaintiffs filed timely responses thereto. Contemporaneously with the filing of those responses, Plaintiffs filed a motion to convert Defendants' Motions to Dismiss into motions for summary judgment. By Order (Doc. 76) entered August 30, 2024, the Court denied the motion to convert. In its August 30, 2024 Order, the Court noted that the Plaintiffs'—apparently presuming that the Court would grant their motion to convert—inappropriately referenced and attached documents, including deposition transcripts that were clearly outside the pleadings. Plaintiffs were ordered to file amended responses to the Motions to Dismiss removing references to all extrinsic materials and exhibits that did not meet the

---

[1] According to Plaintiffs, NICB is a private company put together by large insurance companies to combat fraud.

parameters of the exceptions for extrinsic materials the Court is permitted to consider on a Rule 12(b)(6) motion. The Defendants were permitted to amend their replies. All parties were instructed that the amended responses and replies were not to incorporate by reference any portion of the documents they are intended to replace. Plaintiffs' filed timely amended responses (Docs. 78, 80, 79), and the Defendants each filed timely amended replies (Docs. 81, 82, 84). The Motions to Dismiss are ripe for decision.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Twombly*, 550 U.S. at 556. "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). "But Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1307 (M.D. Ga. 2018) (Land, J.), *aff'd*, 951 F.3d 1269 (11th Cir. 2020) (citations and internal quotation marks omitted).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court makes reasonable inferences in plaintiff's favor, but is not required to draw plaintiff's inference. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). The Supreme Court instructs that while considering a motion to dismiss, a court must accept as true all the allegations contained in a

complaint. This principle, however, is inapplicable to legal conclusions, which must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

When considering a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto." *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Typically, a motion to dismiss must be converted into a motion for summary judgment when a district court considers matters outside the pleadings. Fed. R. Civ. P. 12(d). "However, there are two exceptions to this conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024). In *Johnson*, the Eleventh Circuit noted that it had issued conflicting opinions as to what is required for a court to consider a document not attached to a complaint under the incorporation-by-reference doctrine." *Id.* at 1298. The Circuit clarified that:

> [W]hen resolving a motion to dismiss . . . , a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.

*Id.* at 1300. "[A] court may take notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see also* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

## III.   FACTUAL BACKGROUND

Per the above standard, the factual allegations herein are derived from Plaintiffs' Third Amended Complaint and the Affidavits and Search Warrants attached as exhibits thereto. (*See* Docs. 40-3 through 40-8). The Court construes these factual allegations in the light most favorable to the non-moving parties. In addition, the Court considered the Order to Quash

Search Warrants, Suppress Evidence and Return Seized Property ("Order Quashing Warrants") (Doc. 41-8) entered on October 5, 2023, by Judge Clayton Tomlinson of the Superior Court of Clinch County, Georgia.[2]

On August 27, 2023, April Tinsley signed three probable cause affidavits ("Affidavits") to obtain three warrants ("Search Warrants") to search the home of Plaintiffs John and Julie Andros located at 172 Primrose Lane, Homerville, Georgia ("Residence"), the office of 67 Motors located at 67 West Plant Ave., Homerville, Georgia, and the office of Ideal Transport, located at 174 Primrose Lane, Homerville, Georgia, which is adjacent to the Residence. (Docs. 40 ¶ 8, 40-3, 40-5, 40-7). The Affidavits include April Tinsley's averment that she "is familiar with the methods of operation typically utilized by motor vehicle salespersons." (Doc. 40-4 at 5).[3] The Affidavits reference four crimes, two of which are relevant to the Motions to Dismiss: (1) O.C.G.A. § 16-8-7 Theft by receiving stolen property, and (2) O.C.G.A. § 40-4-22 Buying, selling, receiving, concealing, using, possessing, or disposing of motor vehicle or part thereof from which identification has been removed or altered. (Doc. 40-4 at 4).

As discussed below, Plaintiffs' allege the Affidavits prepared and signed by April Tinsley include certain blatantly false statements. Plaintiffs, however, do not contest the following facts contained in the Affidavits, the substance of which Plaintiffs included in their Amended Response to April Tinsley's Motion (Doc. 78).[4]

Prior to or in early 2023, 67 Motors purchased a used 2020 Chevrolet Silverado pickup truck (the "Silverado") at auction, held it for three months, and then placed it for sale with South Georgia Auto Auction in Albany, Georgia. (Doc. 78 at 2–3). On June 30, 2023, the

---

[2] The Order Quashing Warrants is not attached to the Third Amended Complaint, but a certified true copy is attached to April Tinsley's Motion as Exhibit G. (*See* Doc. 41-8). Under *Johnson*, this Court may properly consider the Order Quashing Warrants in deciding the merits of April Tinsley's Motion because such Order is (1) clearly central to the Plaintiffs' claims as shown by their discussion of it in the Third Amended Complaint, including Plaintiffs' quotations of certain terms and reliance on the Order Quashing Warrants in their lack of probable cause allegations, and (2) the copy provided has been certified as a true and correct copy which has not been challenged by Plaintiffs. *See Johnson*, 107 F.4th at 1300. Further, under *Jones*, the Court may take judicial notice of the Order Quashing Warrants, not for the truth of Judge Tomlinson's findings of fact, but for purposes of recognizing the judicial act taken by Judge Tomlinson. *Jones*, 29 F.3d at 1553.

[3] The three Affidavits are substantially the same. (*See* Docs. 40-4, 40-6, 40-8). For ease in referring to the contents of the Affidavits, all citations refer to Doc. 40-4 with the understanding that, unless otherwise stated, all three Affidavits include the same or similar language.

[4] Unless noted otherwise, Plaintiffs' amended responses to Sheriff Tinsley's Motion and NICB's Motion include substantially the same facts taken from the Affidavits.

Silverado was purchased at auction by Robert Hutson Ford ("Hutson Ford"), located in Moultrie, Colquitt County, Georgia. (Doc. 78 at 3; Doc. 40-4 at 6). Upon returning to his dealership, Robert Hutson of Hutson Ford noticed the Silverado's VIN appeared to have been tampered with and alerted Investigator Herb Bennett with the Lowndes County Sheriff's Office.[5] (Doc. 78 at 3; Doc. 40-4 at 6). Upon further inspection and research by investigators with the Moultrie County Police Department and the Lowndes County Sheriff's Office and with the assistance of Trent Van Lannen ("Van Lannen"), an employee of NICB, it was determined that the Silverado's correct VIN was 1GC4YME70LF125606, and that the VIN had in fact been altered by changing the last three digits from 606 to 808. (Doc. 78 at 3; Doc. 40-4 at 6–7). It was further determined that the Silverado had been stolen on November 19, 2019, from Chevrolet of Smithtown in Suffolk County, New York. (*Id.*) The transfer history of the Silverado under the altered VIN reflects that on December 14, 2019, the Texas Motor Vehicle Department registered the transfer of the Silverado to the first owner. On September 13, 2022, the Florida Motor Vehicle Department issued a title to a new owner. (Doc. 40-4 at 9–10 ¶ 13). As noted, 67 Motors purchased the Silverado subsequent to these transfers.[6] Because the sale of the Silverado was done through 67 Motors' location in Clinch County, Georgia, Investigator Bennett contacted Sheriff Tinsley and provided Sheriff Tinsley with a police report filed by Hutson Ford. (*Id.*)

Giving credence to her experience and the statements in her Affidavits, April Tinsley avers that, "[t]hrough investigations, training, discussions with other law enforcement officers, personal experience, and debriefings of sources, your affiant is familiar with the methods of operation typically utilized by motor vehicle salespersons." (*Id.* at 5).

In their Response to April Tinsley's Motion, Plaintiffs state that "[a]t no time while the [Silverado] was in the possession of 67 Motors did anyone suspect that the [Silverado] was a stolen vehicle." (Doc. 78 at 3). However, since this statement is not included in the Third Amended Complaint, the Court cannot consider it as true for purposes of the Motions to Dismiss. Plaintiffs do not otherwise contest the history of the 2020 Silverado as contained in

---

[5] 67 Motors' principal office is located in Clinch County, Georgia, and it has a sister location in Lowndes County, Georgia. (Doc. 40 ¶ 1; Doc. 40-4 at 7).

[6] The Affidavits indicate that "[a] printout of all available information on the VIN search [performed by April Tinsley] using www.badvin.com" is attached to [the Affidavits]." (Doc. 40-4 at 9 ¶ 12). However, the exhibit is not attached to the copies of the Affidavits attached to the Third Amended Complaint.

the Affidavits. Rather, their allegations against Defendants are based on the following statements which the Plaintiffs contend are blatantly false:

> As of January 1, 2018, all used car dealers in Georgia are required to report *all* car sales/transfers within 30 days via the Electronic Title Registration System (ETR). A list of all vehicles sold by 67 Motors from July 19, 2022 through July 17, 2023 was obtained. Neither the correct VIN nor the altered VIN are documented on the ETR System Report.

(Doc. 40-4 at 11 ¶ 20 (emphasis added)).

Plaintiffs state that all retail sales made by 67 Motors between July 19, 2022, and July 17, 2023, as referred to in the above quote were in fact properly registered with the Georgia ETR and contained the correct VINs. (Doc. 40 ¶ 11). Further, April Tinsley's sworn statement that all used car dealers are required to "report *all* car sales/transfers" via the ETR system is false. (Doc. 40 ¶ 12). Vehicles titled in a dealer's name are not required to be processed through ETR. (*Id.*). Georgia law provides that "a dealer who buys a vehicle and holds it for resale need not apply to the commissioner for a new certificate of title but may retain the certificate delivered to him." O.C.G.A. § 40-3-33. Yet, April Tinsley stated in her Affidavits that:

> While the mere possession of a document detailing an acquisition, transfer, transport, sale or disposition is not in itself evidence that Andros knowingly and willingly did such with the white 2020 Chevrolet Silverado 2500, VIN #1GC4YME70LF125606, the fact that Andros failed to transmit the sale to Georgia's Electronic Title Registration system is evidence that he knew the vehicle was likely stolen. Further, affiant believes that documentation contained therein will likely indicate this was not an isolated incident.

(Docs. 40-4 at 11). 67 Motors had not sold the Silverado to a private individual, and therefore, was not required to register title to the 2020 Chevrolet Silverado through the Georgia ETR system.[7] Plaintiffs' assert April Tinsley maliciously included the above blatantly false statements in her Affidavits and that Sheriff Tinsley ratified those statements.

---

[7] In addition, the Plaintiffs attached the Georgia Department of Revenue's Mandatory ETR Bulletin to Motor Vehicle Dealers to the Third Amended Complaint. (Doc. 40-1) The ETR Bulletin notified Georgia car dealers that effective January 1, 2018, O.C.G.A. § 40-3-33, required dealers to submit applications for certificates of title through the ETR system. However, the ETR Bulletin noted several exceptions to the requirement, including vehicles titled in the dealer's name. Plaintiffs also attached the Affidavit of Lehman Franklin, a board member of Georgia Automobile Dealers Association, stating that "because the [Silverado] was never sold to a private individual in this scenario, it was never required to be registered through the Georgia ETR. To say it was, is just wrong." (Doc. 40-2).

On August 27, 2023, Superior Court Judge Tomlinson signed the Search Warrants. On August 28, 2023, the Tinsley Defendants, along with NICB employee Van Lannen, executed the Search Warrants at the home of John and Julie Andros and at the offices of 67 Motors and Ideal Transport. Plaintiffs allege that when executing the Search Warrants, Sheriff Tinsley told an employee that "if she would turn over Plaintiff's cell phone pass codes, he would not seize any documents pursuant to the search warrants[,]" and that Sheriff Tinsley told "a number of people that John Andros was actively engaged in the business of changing VIN numbers to engage in the sale of stolen vehicles." (Doc. 40 ¶¶ 19, 20). Plaintiffs state this is an untrue and slanderous statement. (*Id.*)

Additionally, Plaintiffs' § 1983 claims are based on allegations that the Affidavits "were prepared to obtain search warrants for various properties owned by Plaintiffs, seeking clearly overbroad search warrants. The [A]ffidavits signed by April Tinsley lacked the minimal requirements of stating the sought after items/articles with particularity." (Doc. 40 ¶ 47; *see also* ¶ 17). Plaintiffs contend there was no basis for their Residence to be included in the properties subject to the Search Warrants. (*Id.* ¶ 45).

Finally, Plaintiffs assert the Tinsley Defendants exceeded the scope of the Search Warrants because during the execution of the Search Warrants: (1) Defendants disabled all security cameras located on Plaintiffs' properties by unplugging the cameras, which was not permitted by the Search Warrants (Doc. 40 ¶ 19); (2) Defendants took communication devices, guns, boxes, medications, and titles to cars which Plaintiffs contend were not logically related to items covered by the Search Warrants (*Id.* ¶¶ 21, 22); and (3) Defendants seized and maintained control of hundreds of items/articles not covered by the search warrants to which Defendants had no right. (*Id.* ¶ 47). Further, Plaintiffs assert Defendants failed to return seized items within a reasonable time, despite Plaintiffs' requests that they do so (*Id.* ¶ 21).

The search and seizure authorized by the Search Warrants was extensive, itemizing twenty-four categories of "instruments, articles, person(s), and/or things," to be searched and seized from Plaintiffs' Residence and the offices of 67 Motors and Ideal Transport. Because it is next to impossible to succinctly describe the vast list of items subject to seizure and because the list is relevant to Plaintiffs' argument that the Search Warrants were overbroad, the list is quoted here. The items subject to seizure were:

1. Electronic data processing and storage devices;

2. Computers and computer systems, internal and peripheral data storage devices, external hard drives, floppy disk drives and disks, tape drives and tapes, optical storage devices, CDs, DVDs, or CD/DVD hard drives, SSD drives, USB drives, M.2 drives, and other digital storage devices;

3. Peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, and related communications devices such as modems or Wi-Fi devices;

4. Backup media;

5. System documentation;

6. Communication devices, cellular phones, "smart" watches, electronic tablets, personal communications devices, electronic calendars/address books, or any other storage media device together with indicia of use, ownership, possession or control of such records;

7. Electronic Title Registration information and documentation;

8. Temporary Operating Permit documentation;

9. Software manuals;

10. Image files, either printed or electronic;

11. Video files in any form;

12. All records of acquisitions, purchases, sales, transfers, transports, trades, dispositions, salvages, or auctions of any and every self-propelled vehicle, including cars, trucks, vans, sport-utility vehicles, motorcycles, golf carts, slingshots, all-terrain vehicles, utility-terrain vehicles, mopeds, recreational vehicles, transfer trucks, and semi-trucks;

13. All records of acquisitions, purchases, sales, transfers, transports, trades, dispositions, salvages, or auctions of any and every trailer, hauler, flatbed, or any device used for transportation or transfer of cargo;

14. Copies of all licenses to engage in the acquisition, purchase, sale, transfer, transport, trade, disposition, salvage, or auction;

15. All records of advertising, including print, radio, television, social media, website, search engine, or email;

16. Email or electronic mail discussing acquisitions, purchases, sales, transfers, transports, trades, dispositions, salvages, or auctions of any and every self-propelled vehicle and hauling apparatus;

17. Any device, labels, or imprints that may be used to alter a VIN;

18. Altered or fraudulent VINs, attached or unattached, to any vehicles;

19. Key fobs, and any device when utilized, may code a key fob;

20. Electronic data located on the vehicle computer, which when scanned, will reveal the original VIN of the vehicle, which are being possessed in violation of Georgia Law(s);

21. All vehicle registrations;

22. All vehicle certificates of titles;

23. All financial documents, including bank statements, credit card statements, lines of credit, transaction information using money transfer applications, accounts receivable, accounts payable, balance sheets, income statements, cash flow statements, and invoices;

24. Any vehicles found to have an altered or tampered with VIN, including vehicles with VINs removed, replaced, or found to have VINs different from the titles or documentation available therein[.]

(Doc. 40-3 at 2–3).

On October 5, 2023, Judge Tomlinson entered the Order Quashing Warrants after concluding that the Search Warrants were not supported by probable cause. In his Order Quashing Warrants, Judge Tomlinson stated:

> The Affidavit contained the following statement of why there was probable cause for this Court to issue the Search Warrants:
>
> **While the mere possession of a document detailing an acquisition, transfer, transport, sale or disposition is not in itself evidence that Andros knowingly and willingly did such with the white 2020 Chevrolet Silverado 2500, VIN #1GC4YME70LF125606, the fact that Andros failed to transmit the sale to Georgia's Electronic Title Registration system is evidence that he knew the vehicle was likely stolen. Further, affiant believes that documentation contained therein will likely indicate this was not an isolated incident.**
>
> (Probable Cause Affidavit, Page 11 of 12).
>
> The searches resulted in the seizure of various items related to the used car business operated by 67 Motors, including computers and records. Although the Search Warrants were related to a stolen vehicle, also seized were the personal records of John and Julie Andros; a purported bottle of steroids; and prescription bottles and contents, some of which were purportedly in the name of family members of John and Julie Andros. Also reportedly seized was a stolen gun.
>
> . . . .
>
> The Defendants [Plaintiffs here] allege the Search Warrants were issued based on information that did not provide probable cause. The Court must agree.
>
> Here, this Court finds the Affidavit contained a conclusory statement based on a misstatement of the law – "**the fact that Andros failed to transmit the sale to Georgia's Electronic Title Registration system is evidence that he knew the vehicle was likely stolen**." A review of the law shows that a dealer who buys a vehicle and holds it for resale does not need to apply to the

10

commissioner for a new certificate of title, but may retain the certificate delivered to the dealer. *See* O.C.G.A. § 40-3-33. Therefore, in this case, 67 Motors was not required to apply for a new title for the vehicle in question, and therefore was not required to transmit the sale to Georgia's Electronic Title Registration system as stated in the Affidavit.

. . . .

a.  This Court finds that the Affidavit contained insufficient information to allow a finding of probable cause to issue the Search Warrants, as such, [Plaintiffs'] Motion to Suppress is HEREBY GRANTED in its entirety, and the Search Warrants are quashed.

b.  The seizure of the property occurred without probable cause and any evidence resulting from the searches is hereby excluded from any further criminal proceedings.

. . . .

d.  The gun; the prescription bottles and their contents; and the steroids shall be immediately destroyed.

e.  All other property seized, and any physical or electronic copy thereof, shall be returned to the [Plaintiffs], instanter.

(Order Quashing Warrants at 2–3 (emphasis in original)).

As to Sheriff Tinsley, Plaintiffs contend that because April Tinsley was hired by him as a volunteer deputy, Sheriff Tinsley is responsible for April Tinsley's acts. Plaintiffs allege Sheriff Tinsley knew April Tinsley had on numerous occasions misrepresented matters involved in official investigations, she had been listed as "terminated" on the Georgia Peace Officer Certification website, had been accused of fabricating parts of investigations by the Georgia Department of Drugs and Narcotics, and she had even made false accusations of domestic abuse against Sheriff Tinsley. (Doc. 40 ¶¶ 38–40). Regardless of this knowledge, Sheriff Tinsley allowed April Tinsley to take charge of the investigation involving the Plaintiffs.

Insofar as their specific claims against NICB, Plaintiffs state that "[u]pon information and belief, agents and employees of Defendant NICB were personally involved in the improper and illegal seizure of Plaintiffs' personalty on August 28, 2023." (Doc. 40 ¶ 18). Plaintiffs contend that the acts committed by NICB in aiding in obtaining the allegedly illegal Search Warrants were intentional, malicious, and done in bad faith. (*Id.* ¶ 26). Specifically, Plaintiffs contend that at all relevant times and with the knowledge and consent of NICB, Van Lannen represented himself as a "special agent" when he was not in fact an official special agent of any policing organization. According to Plaintiffs, Van Lannen characterized himself

as a special agent to give the appearance that he had the authority to participate in the execution of the Search Warrants. (*Id.* ¶¶ 76–78).

In their Third Amended Complaint, Plaintiffs allege the following eight federal and state law causes of action:

1. Section 1983 Claim for Violation of Plaintiffs' Fourth and Fourteenth Amendment Rights against the Tinsley Defendants in their Individual Capacities;

2. Section 1983 Claim for Violation of Plaintiffs' Fourth and Fourteenth Amendment Rights against Sheriff Tinsley in his Official Capacity;

3. Claims for Intentional Infliction of Emotional Distress and Trespass against the Tinsley Defendants in their Individual Capacities;

4. Claims for Negligence, Gross Negligence, Intentional Infliction of Emotional Distress, Trespass and Trespass to Personalty against NICB;

5. Conspiracy Claim against All Defendants;

6. Section 1988 Claim for Attorney Fees against April Tinsley in her Individual Capacity and against Sheriff Tinsley in his Individual and Official Capacities;

7. Claim for Attorney Fees against All Defendants Pursuant to Georgia Code § 13-6-11; and

8. Claim for Punitive Damages against All Defendants.

Plaintiffs allege various monetary and emotional damages resulting from Defendants seizing and retaining their books, records, communication devices, and titles to cars, including in part, 67 Motors' loss of sales, Ideal Transport's loss of business, a lost business opportunity to purchase a building, excess employee expenses, and attorney fees.

## IV.    SHOTGUN PLEADING

As an initial matter, Sheriff Tinsley asserts that the Third Amended Complaint is an improper shotgun pleading. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). The Eleventh Circuit has identified four "rough types or categories of shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Offc.*, 792 F.3d 1313, 1320 (11th Cir.

2015). Those are a complaint: (1) "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint[,]" (2) "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[,] (3) fails to "separate[e] into a different count each cause of action or claim for relief[,] and (4) "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321-23. The issue for the Court is whether the complaint provides a defendant with "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (citation and internal quotation marks omitted).

    Here, the Third Amended Complaint shares some characteristics of a shotgun pleading. Specifically, in the portion of the Third Amended Complaint which sets out the Plaintiffs' claims, all preceding paragraphs are incorporated into each successive claim. The claims are not neatly numbered as Count I, II, *etc.*, but the relevant statute or cause of action and the identity of the Defendant(s) against whom each claim is asserted is presented in bold type as a title to the claim. As Sheriff Tinsley points out, some of the claims include references to other claims. For instance Plaintiffs' first § 1983 claim against the Tinsley Defendants in their individual capacities, includes statements that Defendants' are liable for conversion under Georgia law or that their actions constitute an intentional infliction of emotional distress ("IIED"). (Doc. 40 ¶¶ 47, 52). While some claims could/should have been stated more clearly, that is the purpose of the Defendants' current Rule 12(b)(6) Motions to Dismiss as to particular claims. "[I]t is not dispositive of the separate question of whether the claims in this complaint are so poorly pleaded that they warrant a dismissal under Rules 8(a)(2) and 10(b) regardless of whether they state viable claims." *Weiland*, 792 F.3d at 1325.

    After careful review of the Third Amended Complaint, the Court finds that the eight claims stated "are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Id.* at 1326.

    Sheriff Tinsley requests that if the Court determines that dismissal with prejudice is not warranted on the Rule 12(b)(6) grounds that the Court order Plaintiffs to provide a more

definitive statements of their claims. The Court notes that Sheriff Tinsley was able to present his Rule 12(b)(6) arguments as to each claim without any apparent difficulty in understanding the claims against him.

Accordingly, Sheriff Tinsley's Motion to dismiss the Third Amended Complaint as a shotgun pleading is **DENIED**, and his request for a more definitive statement is likewise **DENIED**.

The Court next addresses the substantive Rule 12(b)(6) arguments presented in the Motions to Dismiss.

## V.    APRIL TINSLEY'S MOTION AND SHERIFF TINSLEY'S MOTION

### A.  Section 1983 Claims Against Tinsley Defendants in their Individual Capacities

Title 42 U.S.C. § 1983 creates a cause of action which allows an individual whose federal constitutional or statutory rights have been violated to seek damages from the state actor who caused the violation.[8] A plaintiff asserting a § 1983 claim must show that the conduct complained of (1) was committed by a person acting under color of state law, and (2) that conduct deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156–57 (1978)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–257 (1978)).

1.  Summary of the Parties' § 1983 Arguments

Plaintiffs' assert the Tinsley Defendants violated their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures by (1) submitting what they knew or should have known were false Affidavits to obtain the Search Warrants; (2)

---

[8] 42 U.S.C. § 1983, in pertinent part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

seeking clearly overbroad search warrants that lacked the minimal requirements of stating the sought after items/articles with particularity and being overbroad by including John and Julie Andros's Residence in the areas sought to be searched; and (3) exceeding the scope of the Search Warrants when executing such Warrants. Plaintiffs further argue that the Tinsley Defendants are not entitled to qualified immunity because they have not met their burden to establish that they were acting within their discretionary authority and the Tinsley Defendants did not have at least arguable probable cause for the Search Warrants.

The Tinsley Defendants argue they are entitled to qualified immunity with respect to Plaintiffs' § 1983 claims for alleged violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments. Sheriff Tinsley further argues that Plaintiffs offer no factual allegations suggesting that Sheriff Tinsley personally participated in obtaining the warrants.[9]

> 2. <u>Plaintiffs pled sufficient factual allegations to show that Sheriff Tinsley personally participated in obtaining the Search Warrants.</u>

With respect to Sheriff Tinsley's participation in obtaining the Search Warrants, Plaintiffs allege:

> [T]he probable cause affidavit(s) contained . . . blatantly false information, maliciously stated by April Tinsley and ratified by Stephen Tinsley. (Doc. 40 ¶ 11).

> The items included in the search warrants by Defendants April Tinsley and Stephen Tinsley were overly broad and failed to particularly describe many of the items/articles eventually confiscated. (*Id.* ¶ 17).

> Upon information and belief, Sheriff Tinsley was personally involved in the preparation of the three search warrants, and in the execution thereof. (*Id.* ¶ 43).

> Defendants April Tinsley and Sheriff Tinsley infringed on the Plaintiffs' reasonable expectation of privacy, through the unreasonable search based on an invalid search warrant. (*Id.* ¶ 46).

---

[9] The Court notes that Sheriff Tinsley "incorporates and defers to [April Tinsley's] argument and discussion of the preparation and contents of the warrant affidavits" (Doc. 45 at 3). Sheriff Tinsley also "adopts" portions of April Tinsley's brief demonstrating that Plaintiffs failed to state a claim under Georgia law, "and shows that he, like April Tinsley, is also entitled to official immunity on Plaintiffs' state-law claims" (*Id.* at 19). April Tinsley adopts Sheriff Tinsley's argument and discussion addressing Plaintiffs' arguments that the Search Warrants were overbroad and that Defendants exceeded the scope of the Search Warrants. (Doc. 41-1 at 12 n.3).

For future filings before the Court, the Parties are notified that the Court disfavors, and gives little weight to, the adoption and incorporation of one Party's motion and brief into a motion and brief filed on behalf of another Party, particularly without a showing as to how such materials *specifically* apply to the incorporating Party. Future filings by each Party are expected to set out such Party's arguments in full and as applied to him or her.

Defendants April Tinsley and Stephen Tinsley were reckless and/or callously indifferent to the constitutional rights of Plaintiffs John and Julie Andros by submitting what they did or should have known to be false affidavits. . . . (*Id.* ¶ 47).

Defendants' actions involving the submission of deficient warrant affidavits and the unlawful searches and seizures of Plaintiffs' properties, items, and articles, and the retention of such seized items violated Plaintiffs' Fourth and Fourteenth Amendment rights. (*Id.* ¶ 52).

Defendant Sheriff Tinsley had actual knowledge of the fatal deficiencies in the warrant . . . . (*Id.* ¶ 69).

    3.  <u>Accepting the above allegations as true and construing them in the light most favorable to the Plaintiffs, the Court finds Plaintiffs have alleged sufficient facts to show that Sheriff Tinsley was personally involved in preparing and obtaining the Search Warrants. Accordingly, Sheriff Tinsley's Motion to dismiss Plaintiffs' § 1983 claim against Sheriff Tinsley, in his individual capacity, on the basis that Plaintiffs failed to state a claim is</u> **DENIED**.[10]Qualified Immunity

The Court turns next to the Tinsley Defendants' argument that they are entitled to qualified immunity with respect to Plaintiffs' § 1983 claim against them, in their individual capacity.

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. For qualified immunity to apply, a government official must first establish that he was acting within his discretionary authority when the alleged wrongful acts occurred. Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right. Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct. "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.

*Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (citations and internal quotation marks omitted). Once the burden shifts to plaintiff, then to overcome qualified immunity at the motion to dismiss stage, "a plaintiff must 'plead[ ] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established' at the time of

---

[10] *See also* Court's discussion of supervisory liability *infra* Section V.A.3.d.

the challenged conduct." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). This Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft,* 563 U.S. at 743 (2011).

### a.  *The Tinsley Defendants were acting within their discretionary authority.*

The Tinsley Defendants acted within their discretionary authority if their actions were (1) undertaken pursuant to the performance of their duties and (2) within the scope of their authority. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). In other words, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, *the outer perimeter* of an official's discretionary duties." *Mikko*, 857 F.3d at 1144 (citations and internal quotation marks omitted). The question of whether a defendant's acts fall within the scope of discretionary authority is a question of fact. "A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." *Espanola Way Corp. v. Meyerson*, 690 F.2d at 830.

Plaintiffs contend that April Tinsley was not acting within her discretionary authority when she obtained the Search Warrants because she was not an "employee" of the Clinch County Sheriff's Department ("CCSD"), but was only a "reserve" officer. Further, because April Tinsley did not describe in her brief the scope of her duties as a volunteer, or define the perimeter of her authority, Plaintiffs contend April Tinsley has not met her burden to demonstrate her actions were within her discretionary authority. Plaintiffs' contention borders on frivolous.

As April Tinsley points out, in their Third Amended Complaint, Plaintiffs allege April Tinsley is a "duly sworn, P.O.S.T. certified law enforcement officer with the [CCSD,]" and that at all times relevant to this action, April Tinsley was employed by the CCSD and was acting under the color of the law as a duly sworn law enforcement officer. (Doc. 40 ¶¶ 3, 33).

Courts look to state law to determine the scope of a state official's discretionary authority. *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Georgia law provides that:

> (a) A search warrant may be issued only upon the application of an officer of this state or its political subdivisions charged with the duty of enforcing the criminal laws or a *currently certified peace officer engaged in the course of official duty*, whether said officer is employed by a law enforcement unit of:
>
> > (1) The state or a political subdivision of the state; or
> >
> > (2) A university, college, or school.

O.C.G.A. § 17-5-20 (emphasis added). Plaintiffs provide no authority to support their contention that April Tinsley—who they acknowledge is, and who was at the relevant time, a certified law enforcement officer, employed by the CCSD, and acting under color of law as a duly sworn law enforcement officer—did not have discretionary authority to take steps to obtain a search warrant as one of her usual job-related activities. The Court finds that April Tinsley was acting within her discretionary authority in preparing the Affidavits and obtaining the Search Warrants.

The sole basis for Plaintiffs' position that Sheriff Tinsley failed to establish that he was acting within his discretionary authority is that he failed to make such argument. Thus, because Sheriff Tinsley did not meet this initial burden, Plaintiffs contend he is not entitled to qualified immunity. Contrary to Plaintiffs' position, Sheriff Tinsley does in fact argue that, to the extent he was involved in obtaining and executing the Search Warrants, he was acting within his discretionary authority. (Doc. 45, Part II.A.). In support of his argument, Sheriff Tinsley cites *Watts v. McLemore*, No. 1:18-CV-079, 2019 WL 13175549 (M.D. Ga. Sept. 26, 2019). In considering whether a sheriff was acting within his discretionary authority, the Court in *McLemore* found that "Georgia courts have held that a law enforcement officer acts 'within [his] discretionary authority in investigating the case, obtaining search and arrest warrants, and in executing those warrants.'" *Watts*, 2019 WL 13175549, at *8 (quoting *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011)).

The Court finds that Sheriff Tinsley was acting within his discretionary authority with respect to Plaintiffs' allegations as to his involvement in preparing the Affidavits and obtaining the Search Warrants. The burden now shifts to Plaintiffs to allege sufficient facts to show that the Tinsley Defendants are not entitled to qualified immunity, *Garcia*, 75 F.4th at 1185.

b.  *The Plaintiffs pled sufficient facts showing that the Tinsley Defendants violated Plaintiffs' Constitutional Rights.*

The Fourth Amendment of the U.S. Constitution provides that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. Before a warrant is issued, a neutral and detached magistrate judge must review the warrant and make his own independent assessment as to whether the warrant and its underlying affidavit contain a sufficient amount of information to support a finding of probable cause. *United States v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002). The Supreme Court has noted that "the distinction between a search warrant and an arrest warrant would not make a difference in the degree of immunity accorded the officer who applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986).

> Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.

*Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (citations and internal quotations marks omitted).

The Supreme Court "has emphasized that courts should pay great deference to a magistrate judge's determination of probable cause." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 84 (2017), *as revised* (Apr. 3, 2017) (citation and internal quotation marks omitted); *see also United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990) ("[T]he practical nature of the magistrate's decision justifies . . . upon review . . . upholding the magistrate's findings even in marginal or doubtful cases."). Here, Superior Court Judge Tomlinson initially found that probable cause existed to issue the Search Warrants.

"Usually, a warrant establishes probable cause, but not when 'the magistrate . . . issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.'" *Hooks v. Brewer*, 818 F. App'x 923, 927 (11th Cir. 2020) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)); *see also Ross v. James*, 861 F. App'x 770, 778 (11th Cir. 2021) (per curiam) (an officer's intentional or reckless misstatements or omissions in a warrant affidavit may violate the Fourth Amendment). In *Ross*, the Eleventh Circuit explained:

We employ a two-part test to determine whether a misstatement or omission in an officer's affidavit amounts to a Fourth Amendment violation. First, we ask whether there was an intentional or reckless misstatement or omission. Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included. If the affidavits, including the omitted information, would have demonstrated even arguable probable cause then the officers are entitled to qualified immunity. Further, arguable probable cause as to any one offense listed in the application or affidavit is sufficient.

*Ross*, 861 Fed. App'x at 778 (alterations adopted) (citations and internal quotation marks omitted). "Recklessness occurs when an officer should have recognized the error, or at least harbored serious doubts about the information. An officer cannot ignore easily discoverable facts and choose to ignore information. *Hooks*, 818 F. App'x at 927–28 (citations and internal quotation marks omitted).

As noted by Judge Tomlinson, the Affidavits contained a conclusory statement based on a misstatement of Georgia law, and April Tinsley now acknowledges that her statement that used car dealers are required to report all sales/transfers within thirty days via the ETR system was "incorrect." (Doc. 41-1 at 4). She further specifically acknowledges that 67 Motors was not required to register the Silverado through the ETR system.[11] (*Id.*) The Tinsley Defendants' characterization of April Tinsley's statements as merely "incorrect" is self-serving. April Tinsley held herself out to Judge Tomlinson as being knowledgeable and experienced in the operations of motor vehicle sales persons. (Doc. 40-4 at 5). Yet she misstated facts that a person with such knowledge should have known or which were so easily discoverable as to lead to an inference that her misstatements were intentional. Certainly if not intentional, they were at the very least, reckless. And they were not the only misstatements in the Affidavits. In addition to the two the Tinsley Defendants now acknowledge, the Affidavits included the following misstatements, omissions, and unsupported conclusions:

1.      April Tinsley's sworn statement concluded that "the fact that Andros failed to transmit the sale [of the Silverado] to Georgia's [ETR] system is evidence that he knew the vehicle was likely stolen." (Doc. 40-4 at 11). This assertion is *totally* unsupported by any facts as to why April Tinsley reached such a conclusion.

---

[11] Recall that in his Motion to Dismiss, Sheriff Tinsley "incorporates and defers to [April Tinsley's] argument and discussion of the preparation and contents of the warrant affidavits" (Doc. 45 at 3). As such, he also incorporates April Tinsley's concessions.

2.      The Affidavits state: "A list of all vehicles sold by 67 Motors from July 19, 2022 through July 17, 2023 was obtained. Neither the correct VIN nor the altered VIN are documented on the ETR System report." (*Id.*) Plaintiffs argue that this statement leads the reader to believe that all of the vehicles sold by 67 Motors during that timeframe were not properly documented in the ETR system. When, in fact, the Silverado was the only vehicle that was not on the ETR report, *and* it was not required to be on the report. This Court agrees and finds this clarification is necessary to cleanse the Affidavits of this erroneous impression.

3.      April Tinsley stated that she believed that documentation—presumably expected to be recovered during the search—will likely indicate that the sale of the stolen Silverado was not an isolated incident. (*Id.*) There was no basis given for April Tinsley to come to the conclusion that Plaintiffs had previously received or sold stolen vehicles or otherwise acted improperly with respect thereto. The Tinsley Defendants' unsupported inference is also undercut by the fact that they knew at the time the Affidavits were prepared and submitted that the Silverado had been stolen, registered under the altered VIN, and sold to two separate owners before Plaintiffs bought and sold the Silverado at auction. The false statement had the effect of bolstering the otherwise unsupported inference that Plaintiffs were knowingly dealing in stolen vehicles with altered VINs, the clear object of the searches.

The Court finds that the Plaintiffs pled sufficient factual allegations to show that the Affidavits included intentional or at least reckless misrepresentations or omissions to show that actual probable cause did not exist for the issuance of the Search Warrants.

Even without actual probable cause, the Tinsley Defendants are entitled to qualified immunity if the Affidavits provided arguable probable cause for the issuance of the Search Warrants. "[T]he Supreme Court has explained that probable cause 'is not a high bar' and 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' And arguable probable cause is a standard lower than probable cause." *Landau v. City of Daytona Beach*, No. 21-12947, 2023 WL 6622208, at *10 (11th Cir. Oct. 11, 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

> Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendants] *could* have believed that probable cause existed to arrest.
>
> Whether an officer has probable cause or arguable probable cause, or neither, depends on the elements of the alleged crime and the operative fact

pattern. The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable merely because it appears, in hindsight, that he might have made a mistake. . . .

*Gates*, 884 F.3d at 1298 (alterations and emphasis adopted) (citations and internal quotation marks omitted). The Tinsley Defendants argue that even without the misstatements, the Affidavits provide arguable probable cause. As support, they point to the Eleventh Circuit's holding in *Ross* that "arguable probable cause as to any one offense listed in the application or affidavit is sufficient." 861 Fed. App'x at 778. The Tinsley Defendants ignore that "[i]n considering probable cause, we do not isolate events, but consider the totality of the circumstances, to decide whether there was a fair probability that contraband or evidence of a crime will be found in a particular place. *Hooks*, 818 F. App'x at 927.

The Tinsley Defendants argue that reasonable officers could have believed that the cleansed Affidavits provided probable cause that John Andros and 67 Motors violated two Georgia laws: (1) O.C.G.A. § 16-8-7 Theft by receiving stolen property; and (2) O.C.G.A. § 40-4-22 Buying, selling, receiving, concealing, using, possessing, or disposing of motor vehicle or part thereof from which identification has been removed or altered.[12] Both statutes include an element of knowledge on the part of the offender. Realizing that the cleansed Affidavits would no longer include information as to Plaintiffs' knowledge that the Silverado was stolen or knowledge that the VIN had been altered, the Tinsley Defendants contend that under Eleventh Circuit precent "evidence of intent is not necessary to establish a finding of probable cause or arguable probable cause." (Doc. 41-1 at 12 (citing *Ross*, 861 F. App'x at 783)). Thus, according to the Tinsley Defendants, "because John Andros and 67 Motors sold a stolen

---

[12] Georgia Code § 16-8-7 provides: "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control or lending on the security of the property." Ga. Code Ann. § 16-8-7(a) (emphasis added).

Georgia Code § 40-4-22 provides:

> (a) It shall be unlawful to buy, sell, receive, dispose of, conceal, use, or possess any motor vehicle, or any part thereof, from which the manufacturer's serial numbers or other distinguishing numbers or identifying marks have been removed, defaced, covered, altered, or destroyed for the purpose of concealing or misrepresenting the identity of such motor vehicle.

> (b) Any person who knowingly violates any provisions of subsection (a) of this Code section is guilty of a felony and, upon conviction, shall be punished by confinement in the penitentiary for not less than one nor more than five years.

Ga. Code Ann. § 40-4-22 (emphasis added).

vehicle whose VIN had been altered, a reasonable officer could conclude that the [Affidavits] established arguable probable cause." (*Id.*)

Under their scenario, the Tinsley Defendants would have to totally rewrite the Affidavits. They do not get to do so. Defendants ignore the substantial list of twenty-four categories of items, documents, articles, *etc.*, (*see supra* 8–10) and the three locations the "cleansed" Affidavits would still contain. For instance just *one* of those twenty-four categories requests authority to search and seize: "All records of acquisitions, purchases, sales, transfers, transports, trades, dispositions, salvages, or auctions of any and every self-propelled vehicle, including cars, trucks, vans, sport-utility vehicles, motorcycles, golf carts, slingshots, all-terrain vehicles, utility-terrain vehicles, mopeds, recreational vehicles, transfer trucks, and semi-trucks[.]" (Doc. 40-3 at 2 ¶ 12). Thus, the question is whether a hypothetical objectively reasonable officer could find that he had probable cause to search and seize all of those items—including golf carts, slingshots, all-terrain vehicles, mopeds, *etc.*—because the Plaintiffs received and sold *one* stolen Silverado with an altered VIN where there was no evidence or even reasonable inference that Plaintiffs had anything to do with the theft or altering the VIN, as necessary for the offense.

The clear objective of the Affidavits was an unlimited wholesale search not only of Plaintiffs' businesses but of all of their property, including their personal residence, without any factual allegations as to what evidence would be found and why it would be found in all the places listed. The Affidavit must be viewed at the time of its presentation as presented, not in hindsight devoid of the relevant facts and circumstances as known to that officer.

Although, as the Tinsley Defendants argue, they do not have to establish intent as part of probable cause, they did have to establish probable cause that Plaintiffs committed a crime and must support any search of Plaintiffs' properties carried out in connection with the crime with at least arguable probable cause. However, where affidavits contain materially false information in support of issuance of the search warrants, arguable probable cause must be determined from the totality of the circumstances, context and objectives of the redacted affidavits and any searches carried out as contemplated by the warrant applications. The question is whether there was arguable probable cause for the searches based on the same circumstances and in the same context, only excluding the false information from the affidavits.

23

In the context, totality of circumstances, and objectives of the Affidavits here, the Court finds, based on the information that would be shown to have been known to an objective officer, that the officer would not find he had probable cause to execute the searches contemplated by the subject Search Warrants where the subject white Silverado truck had been stolen in the State of New York on November 19, 2019, first registered to a private owner in the State of Texas on December 14, 2019, and to a second registered private owner in the State of Florida on September 13, 2022, before being purchased in March 2023—more than three years after it was stolen—at auction by Plaintiffs, and finally sold in June 2023, by Plaintiffs at auction in Albany, Georgia, to Robert Hutson Ford Lincoln.

The Affidavits clearly sought search warrants to seek evidence of other crimes involving other motor vehicles, boats, trailers, *etc.* and altered VINs at Plaintiffs' businesses and private residence, including searching electronic devices, *etc.*, virtually without limitation. The materially false information and unsupported conclusions together with the fact of the stolen white truck with the altered VIN was used and intended to leverage and bolster the affiant's—April Tinsley's—inference that the stolen white truck was not the only incident evidencing Plaintiffs' alleged dealings in stolen motor vehicles and illegally altering VINs. Without the false statements and factually unsupported conclusions and inferences, all that remains is a single stolen white truck with an altered VIN. The Tinsley Defendants had no reasonable facts or grounds to believe or infer that Plaintiffs stole the truck, altered the VIN, or possessed it except through a purchase and sale of it at auction through Plaintiffs' used car dealership to another dealer. No objectively reasonable officer on these facts, and in these circumstances as known to the officers, could reasonably believe he had probable cause to execute the searches complained of here by Plaintiffs.

Based on the foregoing, the Court finds for purposes of ruling on April Tinsley's and Sheriff Tinsley's Motions to Dismiss that the Tinsley Defendants have not established that arguable probable cause existed for the issuance of the Search Warrants.

Plaintiffs' Third Amended Complaint alleges that the Search Warrants were overbroad in that they (1) failed to particularly describe the items/articles sought, and (2) permitted Defendants to search Plaintiffs' Residence based on unsubstantiated conclusion that "on your affiant's knowledge, training, and experience the [R]esidence is likely divided from the residence [sic] for tax savings purposes. There was no basis to gain access to the [Residence]."

(Doc. 40 ¶ 45, 47). The Affidavits do not contain information as to April Tinsley's expertise or experience in tax matters and the basis for searching the Residence apart from the business is conclusory. As a final example of the overreaching and overbroad requests contained in the Affidavits, the Court notes that the Affidavits requested authorization to search and seize "human biological materials, . . . and anything that is tangible or intangible, corporeal or incorporeal, or visible or invisible evidence of the commission of the crime(s) for which probable cause is shown[.]" (Doc. 40-4 at 3). Even if the Tinsley Defendants believed they had probable cause based on the stolen truck with an altered VIN to believe Plaintiffs were involved in dealing in stolen vehicles and altering VINs, the Court finds it incredible that they could have believed probable cause existed to include such items in the Affidavits. The false statements in the Affidavits were clearly presented to support the broad search requested. Without them, insufficient support remains for such a broad search. The Tinsley Defendants cannot now in hindsight create arguable probable cause by ignoring and failing to address the actual circumstances of the request for the Search Warrants which remain overbroad without particularity. The Court finds the Search Warrants were overbroad as the facts presented in support do not justify the breadth of the items to be seized and all the places to be searched.

Accordingly, the Court finds that the Plaintiffs pled sufficient facts to adequately support their allegations that the Tinsley Defendants violated a constitutional right when they obtained the Search Warrants.

   c. *The Plaintiffs pled sufficient facts showing that the Tinsley Defendants violated clearly established law.*

The final question as to whether the Tinsley Defendants are entitled to qualified immunity is whether Plaintiffs alleged sufficient facts to show that the unlawfulness of the Tinsley Defendants' conduct was clearly established at the time the Search Warrants were requested and issued.

> Under longstanding Supreme Court precedent, an officer must provide particular information to support an arrest warrant. Our precedents agree—an officer who seeks an arrest warrant[13] based on a conclusory affidavit that clearly is insufficient to establish probable cause is not entitled to qualified immunity.

---

[13] *Malley*, 475 U.S. at 344 n.6 ("[T]he distinction between a search warrant and an arrest warrant would not make a difference in the degree of immunity accorded the officer who applied for the warrant.").

*Luke v. Gulley*, 50 F.4th 90, 97 (11th Cir. 2022). A warrant is constitutionally infirm when "the officer who applied for the warrant should have known that his application failed to establish probable cause or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* at 95–96. As discussed above, Plaintiffs have alleged sufficient facts showing that the Affidavits included material, intentional and/or reckless misstatements of the law and conclusory statements such that the Tinsley Defendants should have known they lacked probable cause to obtain the search warrants. Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to show that the unlawfulness of the Tinsley Defendants' conduct was clearly established when the Tinsley Defendants acted and they are not entitled to qualified immunity.

### d. <u>The Plaintiffs pled sufficient facts to state a claim against Sheriff Tinsley based on supervisory liability</u>

Plaintiffs also assert § 1983 claims against Sheriff Tinsley in his supervisory capacity. Sheriff Tinsley contends that Plaintiffs failed to state a claim against him to support such claim.

> It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. . . .

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when . . . facts support an inference that the supervisor . . . knew that the subordinates would act unlawfully and failed to stop them from doing so. . . . Ultimately, though, the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.

*Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (alterations adopted) (citations and internal quotations marks omitted). Plaintiffs allege that Sheriff Tinsley allowed April Tinsley to run the investigation into Plaintiffs' activities even though he knew April Tinsley had (1) on numerous occasions misrepresented matters involved in official investigations, (2) been listed as "terminated" on the Georgia Peace Officer Certification website, (3) been accused of fabricating parts of investigations by the Georgia Department of Drugs and

Narcotics, and (4) even made false accusations of domestic abuse against Sheriff Tinsley. Sheriff Tinsley contends that Plaintiffs' allegations are insufficient.

The Court disagrees. The allegations are sufficient to plausibly allege that April Tinsley had on multiple occasions done precisely what Plaintiffs allege she did to them—misstated or misrepresented matters involving investigations, that Sheriff Tinsley had personal knowledge of her history and the consequences of her actions, that he still hired her and allowed her to lead the investigation, and did not stop her from making the numerous false and conclusory statements contained in the Affidavits. Supervisory liability is sufficiently alleged by Plaintiffs.

### 4. Conclusions as to Plaintiffs' § 1983 Claims Against Tinsley Defendants in their Individual Capacities

Accordingly, April Tinsley's Motion (Doc. 41) and Sheriff Tinsley's Motion (Doc. 45) to dismiss the Plaintiffs' § 1983 Claims against April Tinsley and Sheriff Tinsley in their individual capacities for violation of Plaintiffs' Fourth and Fourteenth Amendment rights are **DENIED**.

## B. Section 1983 Claim Against Sheriff Tinsley in his Official Capacity

The specific allegations relating to Plaintiffs' § 1983 claim against Sheriff Tinsley in his official capacity are set out in paragraphs 57 through 63 of the Third Amended Complaint. Plaintiffs allege that Sheriff Tinsley participated in the execution of the illegally-obtained Search Warrants, as well as the seizure of certain items of Plaintiffs' personal property. (Doc. 40 ¶ 60). Plaintiffs also contend that Sheriff Tinsley "employed a custom, policy and procedure of allowing individuals who were not employed by the Sheriff's Office to participate in law enforcement activities, including the preparation and execution of search warrants." (*Id.* ¶ 58). In particular, Plaintiffs allege Sheriff Tinsley allowed Van Lannen, an employee of NICB, to participate in the preparation of the Search Warrants in this case and that employees of NICB participated in the search and seizure of certain items from Plaintiffs' properties. (*Id.* ¶ 61). Finally, Plaintiffs contend that Sheriff Tinsley's "policy of allowing unqualified individuals to participate in law enforcement activities was proximately related to the violation of the Plaintiffs' Fourth and Fourteenth Amendment rights." (*Id.* ¶ 62).

Sheriff Tinsley moves to dismiss Plaintiffs' § 1983 claim against him in his official capacity on the basis that such claim is barred by Eleventh Amendment immunity. This Court agrees.

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The Eleventh Amendment protects a State from being sued in federal court without the State's consent. As a result, parties with claims against a non-consenting State must resort to the State's own courts." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The Eleventh Amendment also bars suit brought in federal court when an "arm of the State" is sued. *Id.* Whether a defendant is an "arm of the State" is not determined by labels or titles. Rather, the Court looks to the particular function in which the defendant was engaged when taking the alleged actions giving rise to liability. *Id.*

To determine whether an entity is an "arm of the State," courts consider the following four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. In *Manders*, the Eleventh Circuit examined Georgia law and determined that a Clinch County sheriff was entitled to Eleventh Amendment immunity as an "arm of the State" when he established and executed a use-of-force policy at the jail. *Id.* at 1328. The entity seeking to invoke Eleventh Amendment immunity "bears the burden of demonstrating that it qualifie[s] as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trs. of Three Rivers Reg'l Libr. Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)). Thus, the particular functions in which Sheriff Tinsley was allegedly engaged which gave rise to Plaintiffs' § 1983 claim were assisting in the acquisition and execution of the Search Warrants and establishing a policy or procedure relating to obtaining search warrants and to individuals who may participate in searches and seizures.

> Since *Manders* was decided in 2003, the relevant Georgia law remains essentially unchanged. Indeed, it is now "insurmountable" that Georgia sheriffs act as arms of the state—not as county officials . . . . The Court, therefore, will not repeat the *Manders* analysis here. In sum, Manders and its progeny dictate that where a sheriff and his deputies are performing their official and authorized duties as state actors—*i.e.*[,] engaged in general law enforcement functions or making arrests pursuant to state law—they are entitled to Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against them in their official capacities.

*Frederick v. Brown*, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) (internal citations omitted) (citing *Manders*, 338 F.3d at 132, and gathering cases holding the same within the Eleventh Circuit); *see also Carter v. Butts Cnty.*, No. 5:12–CV–209, 2015 WL 3477022, at *19 (M.D. Ga. June 2, 2015) (holding the sheriff acted as an arm of the state in maintaining an alleged policy, practice, or custom of failing to discipline his deputies), *rev'd. in part on other grounds*, 821 F.3d 1310 (11th Cir. 2016); *Townsend v. Coffee Cnty.*, 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) (finding a deputy sheriff acted as an arm of the state while making an investigatory stop and arrest); *Stanton v. McIntosh Cnty.*, No. CV 209-092, 2010 WL 11526845, at *4 (S.D. Ga. Sept. 29, 2010) (finding that a sheriff was acting as an arm of the state when "applying for and obtaining arrest warrants"), *aff'd*, 434 F. App'x 871 (11th Cir. 2011).

Here, it is clear that Sheriff Tinsley was acting in his official capacity as a Georgia sheriff during the events that form the basis of Plaintiffs' § 1983 claim. Sheriff Tinsley's policies concerning and duties of obtaining and executing search warrants fall squarely within his traditional law-enforcement functions. Additionally, the laws pursuant to which Sheriff Tinsley's deputy sheriff, April Tinsley, sought the Search Warrants were Georgia laws—Georgia Code §§ 16-8-7 and 40-4-22—not county ordinances. *See Stanton*, 2010 WL 11526845, at *4 (applying for and obtaining arrest warrants). Thus, the Eleventh Amendment bars Plaintiffs' claim for monetary damages against Sheriff Tinsley in his official capacity. Based on the Court's finding, Plaintiffs failed to state a claim upon which relief can be granted with respect to their § 1983 Claim against Sheriff Tinsley, in his official capacity, for violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

Accordingly, Sheriff Tinsley's Motion (Doc. 45) to dismiss Plaintiffs' § 1983 Claim against Sheriff Tinsley, in his official capacity, for violation of Plaintiffs' Fourth and Fourteenth Amendment rights is **GRANTED**. As a result, Plaintiffs' § 1983 Claim against Sheriff Tinsley in his official capacity is **DISMISSED WITH PREJUDICE**.

### C.  Section 1988 Claim Against Sheriff Tinsley in his Official Capacity

Title "42 U.S.C. § 1988, allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice*, 563 U.S. 826, 832–33 (2011); *see also Rhodes v. Stewart*, 488 U.S. 1, 2 (1988) (per curiam) ("There is no entitlement to attorney's fees [under § 1988] . . . unless the requesting

party prevails."). Although not specifically addressed in Sheriff Tinsley's Motion, the Court finds it appropriate to note that because of the dismissal, with prejudice, of Plaintiffs' § 1983 claim against Sheriff Tinsley, in his official capacity, there is no remaining underlying federal claim against Sheriff Tinsley in his official capacity. Thus, the Court finds Plaintiffs' § 1988 claim for attorney fees against Sheriff Tinsley, in his official capacity, is moot.

Accordingly, the Court finds it is appropriate to, and hereby does, **DISMISS WITH PREJUDICE AS MOOT**, Plaintiffs § 1988 claim for attorney's fees against Sheriff Tinsley in his official capacity.

### D. State Law Claims against The Tinsley Defendants[14]

The Plaintiffs' state law claims arise from the Tinsley Defendants' alleged actions in obtaining and executing the Search Warrants which Plaintiffs allege were obtained by use of false allegations, false statements of the law, and unsupported conclusions.[15] The Tinsley Defendants contend that they are entitled to official immunity as to the state law claims, and alternatively, that Plaintiffs failed to state a claim for either IIED or trespass.

#### 1. Official Immunity

"Georgia law protects an officer from personal liability arising from his performance of 'official functions' as long as the officer did not act with 'actual malice' or 'actual intent to cause injury.' *Gates*, 884 F.3d at 1304 (citing Ga. Const. art. I, § 2, para. IX(d)).

> The Georgia Supreme Court has defined actual malice in this context to mean a deliberate intention to do wrong. As such, actual malice is not established merely by showing that the defendant acted with ill will. Nor does actual malice encompass merely the reckless disregard for the rights and safety of others. Likewise, the phrase actual intent to cause injury—as used in Georgia's official immunity provision—means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.

*Gates*, 884 F.3d at 1304 (11th Cir. 2018) (citing *Adams v. Hazelwood*, 520 S.E.2d 896 (Ga. 1999) (internal quotations marks omitted)). Official immunity applies to an officer's discretionary actions taken within the scope of his official authority. *Id.* For purposes of official immunity, "a discretionary act calls for the exercise of personal deliberation and judgment, which in turn

---

[14] Sheriff Tinsley "adopts" the portions of April Tinsley's brief demonstrating that Plaintiffs failed to state a claim under Georgia law, "and shows that he, like April Tinsley, is also entitled to official immunity on Plaintiffs' state-law claims." (Id. at 19).

[15] The Court has discussed these statements in detail above. *See supra* 20–23.

entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011).

The Court has already determined that the Tinsley Defendants were acting within their discretionary authority in obtaining and executing the Search Warrants. Thus, the question is whether Plaintiffs plausibly allege that the Tinsley Defendants acted with actual malice or the actual intent to injure Plaintiffs when they obtained and executed the Search Warrants.

With respect to whether the false allegations, misstatements of the law, and unsupported conclusions contained in the Affidavits are sufficient to show the Tinsley Defendants acted with actual malice or an actual intent to injure the Plaintiffs so as to negate official immunity,

> Georgia courts have noted that actual malice is not present where an officer did not manufacture evidence or knowingly present perjured testimony, and even when an officer made inconsistent, possibly untrue, statements. However, they have determined that a jury could find actual malice where officers improperly procured statements in pursuit of an arrest warrant despite knowing of the statements' falsity, inaccuracy or unreliability.
>
> This suggests a rational divergence in Georgia's official immunity caselaw concerning the degree or magnitude of the (potentially) false statements contained in an arrest warrant. Where the statements might be untrue, or where the officer doesn't know that the statements are untrue, official immunity applies, because the statements are devoid of actual malice. *But on the other hand, where the statements are actually untrue, and the officer writing out the warrant knows that this is the case, official immunity doesn't apply because "actual malice" is present.*

*Brown v. Gill*, 792 F. App'x 716, 722 (11th Cir. 2019) (alterations adopted) (emphasis added) (citations to Georgia case law and internal quotation marks omitted). In *Brown*, the Eleventh Circuit affirmed the district court's denial of summary judgment finding the defendant law enforcement officer was not entitled to official immunity from plaintiff's state court claims, including IIED. *Id.* The Circuit agreed with the district court that where the defendant fabricated details in his application for a warrant, a reasonable jury could infer actual malice and defendant was not entitled to official immunity under Georgia law at the summary judgment stage. Of course here, we are not even at the summary judgment stage, but the pleading stage.

The Tinsley Defendants' attempt, again, to characterize the multiple false, misleading, and conclusory statements contained in the Affidavits as merely inaccurate, negligent, or

unknowing is unpersuasive. In addition to the statements contained in the Affidavits, the Plaintiffs allege that prior to executing the Search Warrants, the Defendants unplugged all security cameras on Plaintiffs' properties which action was not authorized by the Search Warrants. (Doc. 40 ¶ 19). Plaintiffs allege the clear inference from such action is that "Defendants knew they were crossing the line and did not want a record of it." (*Id.* ¶ 49). Further, Sheriff Tinsley (1) told an employee of Plaintiff 67 Motors that if she would turn over Plaintiffs' cell phone pass codes, he would not seize any documents pursuant to the Search Warrants (*Id.* ¶ 19), and (2) slandered John Andros by telling people he was actively engaged in the business of changing VIN numbers to sell stolen vehicles (*Id.* ¶¶ 19–20). Plaintiffs contend these actions show malice on the part of the Tinsley Defendants. (Doc. 78 at 19).

The Court finds that Plaintiffs have plausibly alleged that the Tinsley Defendants acted with actual malice or the actual intent to injure Plaintiffs, and the Tinsley Defendants are not entitled to official immunity at this, the pleading stage of this litigation.

2. <u>Intentional Infliction of Emotional Distress</u>

In order to recover for IIED under Georgia law, a plaintiff must prove: (1) that the defendant engaged in intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that there is a causal connection between the wrongful conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress was severe. *Yarbray v. S. Bell Tel. & Tel. Co.*, 409 S.E.2d 835 (Ga. 1991). Plaintiff's burden to show IIED under Georgia law is exceptionally heavy. In Georgia, conduct giving rise to a claim for IIED "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cornelius v. Auto Analyst, Inc.*, 476 S.E.2d 9, 11 (Ga. Ct. App. 1996) (internal quotation marks omitted).

The Tinsley Defendants argue that Plaintiffs' claim for IIED is based on the inclusion of inaccurate information about the ETR in the Search Warrant Affidavits. The Defendants assert that this "is not the type of conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (Doc. 41-1 at 14 (quoting *Mehta v. Foskey*, No. CV 510-001, 2013 WL 870325, at *14 (S.D. Ga. Mar. 7, 2013). Plaintiffs recognize that "Georgia courts have held that, where an IIED claim is based on an unlawful search or arrest, probable cause will usually negate any possibility that the conduct was outrageous—thus

precluding the claim." (Doc. 78 at 18 (citing *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364, at *12 (11th Cir. Sept. 22, 2022) (citing cases)). Plaintiffs argue, however, that the Tinsley Defendants did not have probable cause for the Search Warrants; and, at this stage of the proceedings, the Court's findings regarding adequacy of the Complaint support that argument. Further, *Mehta* is easily distinguishable from this case because the court there found that the alleged false statement and omissions in the search warrant were at most a negligent mistake. *Id.* at *6. That finding has not been made herein.

Upon review of the submissions before it, the Court finds that there is an insufficient showing to hold, as a matter of law under the instant Motion to Dismiss analysis, that the Tinsley Defendants' alleged behavior fails to meet the level of outrageous conduct as pleaded by the Third Amended Complaint. Defendants' arguments to the contrary do not overcome the showing required by Plaintiffs at this stage of litigation.

### 3. Trespass

Plaintiffs assert that because of the known "fatal deficiencies" in the Search Warrants, the Tinsley Defendants were without legal authority to enter upon any of Plaintiffs' land or to seize any of their property. Specifically, Plaintiffs allege the Tinsley Defendants' actions constitute torts under O.C.G.A. §§ 51-9-1, 51-10-1, and 51-10-2 for which Plaintiffs may recover damages.[16]

The Tinsley Defendants contend Plaintiffs failed to state a claim for trespass because they entered upon Plaintiffs' real estate and seized Plaintiffs' personal property by virtue of the Search Warrants which authorized the searches and seizures. In support of their contention, the Tinsley Defendants cite *Qenkor Constr., Inc. v. Everett*, 773 S.E.2d 821 (Ga. Ct. App. 2015) which they contend holds that "because a search warrant authorized the search of a building, the sheriff's execution of the search warrant did not support a claim for trespass."

---

[16] These provisions provide:

"The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." Ga. Code Ann. §§ 51-9-1.

"The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." Ga. Code Ann. § 51-10-1.

"Interference with the mere possession of a chattel, even if the possession is without title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession. Ga. Code Ann. § 51-10-2."

(Doc. 41-1 at 14). However, *Qenkor* is distinguishable because there the validity of the search warrant was not at issue. The Plaintiffs argue that because they have demonstrated that the Search Warrants were issued without probable cause, those warrants cannot provide the lawful authority for the actions taken by the Tinsley Defendants.

Again, upon review of the submissions before the Court, the Court finds that there is an insufficient showing to hold, as a matter of law under the instant Motion to Dismiss analysis, that the Search Warrants which the Court has determined were not supported by even arguable probable cause provided the Tinsley Defendants' with authority to enter upon the Plaintiffs' land or to seize the Plaintiffs' property.

4.  Conclusions as to Plaintiffs' State Law Claims Against April Tinsley
    and Sheriff Tinsley in their Individual Capacities

Based on the foregoing discussion, April Tinsley's Motion (Doc. 41) and Sheriff Tinsley's Motion (Doc. 45) for dismissal, pursuant to Rule 12(b)(6) and on official immunity grounds, of Plaintiffs' state law claims for IIED, trespass of personalty, and trespass of realty are **DENIED**.

## VI.   NICB'S MOTION

Plaintiffs assert claims for negligence, gross negligence, IIED, trespass to realty, trespass to personalty, and conspiracy against NICB. Those claims are based on the following allegations:

1.  At all relevant times and with NICB's knowledge and consent, Van Lannen was acting as an agent of NICB. (Doc. 40 ¶ 78). Neither Van Lannen nor NICB acted under color of state law. (*Id.* ¶ 80).

2.  Van Lannen actively participated in the August 28, 2023 search and seizure at 67 Motors.[17] (*Id.* ¶¶ 75–76).

3.  Van Lannen "represented himself to be an official officer executing [the Search Warrant]. He was not an official, even though he tried to give himself that imprimatur with the NICB as a special agent[.]" (*Id.* ¶ 78).

---

[17] In their response to NICB's Motion, Plaintiffs concede that Van Lannen only went to the 67 Motors location. (Doc. 80 at 2 n.1).

4.     "Upon information and belief, agents and employees of Defendant NICB were personally involved in the improper and illegal seizure of Plaintiffs' personalty on August [28], 2023." (*Id.* ¶ 79).

5.     By participating in the execution of the Search Warrant, Van Lannen had a duty to read the warrant. He failed to read the warrant or did not adequately "acquaint himself with the facts to understand he was engaged in an illegal search, and/or disregarded the fact that he was engaging in an unlawful search and seizure." (*Id.* ¶ 82).

6.     Van Lannen's actions were intentional or at least reckless. (*Id.* ¶ 83).

7.     The unlawful entry onto another's property and the seizure of their personal property is extreme and outrageous. (*Id.* ¶ 84).

8.     John and Julie Andros were terrified, insulted, humiliated, and/or embarrassed by the unlawful entry onto their property and the seizure of their personal property. (*Id.* ¶ 84). John and Julie Andros "were and remain severely distressed by Van Lannen's actions and continue to suffer injuries and damages." (*Id.* ¶ 85).

9.     NICB committed a trespass to realty by its unauthorized entry onto Plaintiffs' land. (*Id.* ¶ 86)

10.     NICB had no legal authority to participate in the seizure of Plaintiffs' personal property. Through such unauthorized seizure, it unlawfully interfered with Plaintiffs' right to possess and use their personal property and committed a trespass upon Plaintiffs' personalty. (*Id.* ¶¶ 87–88).

NICB moves for dismissal of all of Plaintiffs' claims for failure to state a claim against NICB.

### A. Plaintiffs' Claims for Negligence and Gross Negligence Against NICB

The essential elements of a negligence claim under Georgia law "are the existence of a legal duty; breach of that duty; a sufficient causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Henry v. Atlanta Gas Light Co.*, 841 S.E.2d 10, 13 (Ga. Ct. App. 2020). The threshold issue is a question of law as to whether and to what extent the defendant owes a legal duty to the plaintiff. *Id.* A legal duty sufficient to support liability in negligence is either imposed by statute or by common law. *Id.* The existence of a legal duty is also an essential element of a claim for gross negligence. NICB contends that Plaintiffs'

negligence and gross negligence claims fail because they have not alleged facts to establish that NICB owed any of the Plaintiffs a legal duty. Plaintiffs' sole reference to a duty owed to them by NICB is their conclusory statement that by virtue of his decision to participate in the execution of the Search Warrant, Van Lannen had a duty to read such warrant. However, they do not cite any authority, either statutory or common law, for this conclusion.

As such, Plaintiffs failed to allege factual allegations as to the existence of a legal duty which is an essential element of Plaintiffs' claims for negligence and gross negligence. Thus, Plaintiffs failed to state a claim for negligence or gross negligence against NICB.

Accordingly, NICB's Motion (Doc. 44) to dismiss Plaintiffs' claims for negligence and gross negligence is **GRANTED**.

### B. Plaintiffs' Claim for IIED Against NICB

As noted above, in order to recover for IIED under Georgia law, a plaintiff must prove: (1) that the defendant engaged in intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that there is a causal connection between the wrongful conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress was severe. *Yarbray*, 409 S.E.2d 835. Plaintiff's burden to show IIED under Georgia law is exceptionally heavy. In Georgia, conduct giving rise to a claim for IIED "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cornelius*, 476 S.E.2d at 11 (internal quotation marks omitted).

In arguing that Plaintiffs failed to state a claim against NICB for IIED, NICB essentially relies on the same argument as the Tinsley Defendants; *i.e.*, that the search and seizure of property by virtue of the execution of the Search Warrant precludes a finding that Van Lannen's conduct could be extreme and outrageous. Such is not necessarily true. *See Brown*, 792 F. App'x at 722 (Eleventh Circuit affirming that where the defendant officer fabricated details in his application for a warrant, a reasonable jury could infer actual malice so defendant was not entitled to official immunity from plaintiff's state court claims, including IIED) and discussion *supra* 30–33.

In its reply, NICB asserts that Plaintiffs failed to oppose NICB's prior citation to *Renton v. Watson*, 739 S.E.2d 19 (Ga. Ct. App. 2013), a Georgia Court of Appeals case holding that "an officer who issued a false warrant against another based on personal animosity was not

liable for IIED as a matter of law." (Doc. 82 at 5). The Court notes, however, that NICB did not cite the *Renton* case in its Motion to Dismiss (Doc. 44), but only in its reply. Thus, Plaintiffs did not have the opportunity to respond to NICB's analysis of the *Renton* case. The Court's own review of *Renton* reflects that it is distinguishable from the facts alleged here. In *Renton*, while there were false allegations in an application for an arrest warrant, the application for the warrant was voluntarily dismissed *before* the warrant was issued and before the plaintiff was arrested. *Id.* at 26 (emphasis added). "Under th[o]se circumstances, we conclude as a matter of law that [defendant's] conduct was not so atrocious or utterly intolerable as to rise to the level of intentional infliction of emotional distress, and the trial court committed no error in dismissing the claim." *Id.* That is not what allegedly happened here. In addition, Plaintiffs allege that Van Lannen misrepresented himself as a "special agent" so as to give the impression that he was a law enforcement official with a right to be present during the execution of the Search Warrant.

Upon review of the submissions before it, the Court finds that there is an insufficient showing to hold, as a matter of law under the instant Motion to Dismiss analysis, that Van Lannen's alleged behavior fails to meet the level of outrageous conduct as pleaded by the Third Amended Complaint. As with the Tinsley Defendants, NICB' arguments to the contrary do not overcome the showing required by Plaintiffs at this stage of litigation.

Accordingly, NICB's Motion (Doc. 44) to dismiss under Rule 12(b)(6) Plaintiffs' claim against NICB for IIED is **DENIED**.

### C.  Plaintiffs' Claims for Trespass Against NICB

NICB relies on the same argument as the Tinsley Defendants in support of its argument that Plaintiffs failed to state a claim for trespass; *i.e.,* Van Lannen was authorized to enter upon Plaintiffs' real estate and seize Plaintiffs' personal property by virtue of the Search Warrants. To the extent Plaintiffs assert Van Lannen had no authority to participate in the execution of the Search Warrant, NICB points to the Supreme Court's decision in *Wilson v. Layne*, 526 U.S. 603 (1999). There, the Supreme Court stated that "[w]here the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by this Court and our common-law tradition." *Id.* at 611–12. Assuming for purposes of NICB's Motion that

Van Lannen could accompany the Tinsley Defendants in the execution of a search warrant to identify stolen property, NICB has not provided authority that a third-person accompanying officers would be entitled to any more protection based on a warrant issued without probable cause (or arguable probable cause) than the officers.

Like the Tinsley Defendants, NICB also cites *Qenkor* as support for its argument that Van Lannen's participation in the execution of the Search Warrant at 67 Motors did not support a claim for trespass. (Doc. 41-1 at 14). As discussed above with respect to the Tinsley Defendants' argument, NICB's reliance on *Qenkor* is misplaced because it is distinguishable from the facts alleged here as the validity of the search warrant was not at issue in *Qenkor*.

Again, upon review of the submissions before the Court, the Court finds that there is an insufficient showing to hold, as a matter of law under the instant Motion to Dismiss analysis, that the Search Warrants which the Court has determined were not supported by even arguable probable cause provided NICB's agent, Van Lannen, with authority to enter upon the Plaintiffs' land or to seize the Plaintiffs' property.

Accordingly, NICB's Motion (Doc. 44) to dismiss under Rule 12(b)(6) Plaintiffs' claims against NICB for trespass to realty and trespass to personalty are **DENIED**.

## VII.    PLAINTIFFS' CLAIM FOR CONSPIRACY

Citing Georgia law, April Tinsley asserts that Plaintiffs' conspiracy claim must be dismissed because where there is no underlying tort claim, there is no independent action for civil conspiracy. Sheriff Tinsley adopted April Tinsley's argument, but also contends that Plaintiffs' conspiracy claim fails because Plaintiffs failed to identify any legal framework for their conspiracy claim. Interestingly, NICB relies on case law analyzing a § 1983 conspiracy claim, and argues that Plaintiffs failed to state a claim for conspiracy because they did not allege that NICB and any agent of the Clinch County Sheriff's Office communicated or otherwise resolved to deny Plaintiffs' their rights. NICB asserts that Plaintiffs did not allege the Defendants came to an agreement regarding the denial of Plaintiffs' rights. According to NICB, this is fatal to Plaintiffs' conspiracy claim. (Doc. 44-1 at 13).

Sheriff Tinsley appears to have a point. Defendants have a right to know the applicable law to apply to claims asserted against them. It is also apparent that the Plaintiffs are not sure under which law they pled their conspiracy claim. In their response to NICB's Motion,

Plaintiffs cite O.C.G.A. § 51-12-30 and argue that the Third Amended Complaint sets out a clear claim for civil conspiracy between the Tinsley Defendants and NICB.[18] (Doc. 80 at 5). Plaintiffs, however, also state that "NICB clearly knows the basis of the claims against it" is that "'Special Agent' Van Lannen, working in concert with [the Tinsley Defendants] and other members of law enforcement, procured search warrants based on inaccurate and false information." (Doc. 80 at 18). Which sounds more like Plaintiffs are asserting a § 1983 conspiracy claim based on the alleged violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments. Yet, immediately following this assertion, Plaintiffs switch back to provide Georgia law:

> The law is that a conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.

*Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah Inc.*, 464 S.E.2d 895, 896 (Ga. Ct. App. 1995) (citations and internal quotation marks omitted).

The Defendants are correct. Plaintiffs have not stated a conspiracy claim under Georgia law, because the alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights do not constitute a tort. Absent an underlying tort, there can be no liability for civil conspiracy under Georgia law. *Sweet City Landfill, LLC v. Lyon*, 835 S.E.2d 764, 774 (Ga. Ct. App. 2019).

Plaintiffs also failed to state a § 1983 conspiracy claim.

> To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy. . . . Whereas the linchpin for conspiracy is agreement, which presupposes communication, the defendants in this case suffered from an extreme lack of communication. Thus, we agree with the district court that [plaintiff] failed to establish his conspiracy theory of liability and affirm the district court's final judgments for all defendants on this claim.

---

[18] Section 51-12-30 provides: "In all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." O.C.G.A. § 51-12-30.

*Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (alterations adopted) (citations and internal quotation marks omitted). As noted above, it is not clear whether Plaintiffs' conspiracy claim is even brought under § 1983. However, to the extent that was their intent, as NICB points out, Plaintiffs did not allege there was any communication directly between the Tinsley Defendants or anyone with the Clinch County Sheriff's Office and NICB's agent Van Lannen or any other NICB employee concerning the Search Warrants. Plaintiffs now argue that Van Lannen was working in concert with the Tinsley Defendants "and other members of law enforcement" in procuring the Search Warrants using false and inaccurate information. (Doc. 80 at 18). While the Affidavits include details of Van Lannen's activities with the Lowndes County Sheriff's Office and the Moultrie Police Department during the investigation of the stolen Silverado,[19] there is nothing in the Complaint referring to "other members of law enforcement" being involved in the conspiracy. The Plaintiffs' response to NICB's Motion is the first time allegations are posited that anyone other than the Defendants were involved in the alleged conspiracy. The Court, therefore, finds that Plaintiffs failed to sufficiently allege that the Defendants reached an understanding to procure the Search Warrants based on inaccurate and false information so as to deny Plaintiffs' constitutional rights.

Accordingly, the Defendants' Motions to Dismiss (Docs. 41, 44, 45) are **GRANTED** with respect to Plaintiffs' conspiracy claim as to all Defendants.

## VIII. CONCLUSION AS TO MOTIONS TO DISMISS

The dispositions of the Motions to Dismiss are as follows:

1. Defendant April Tinsley's Motion to Dismiss (Doc. 41) is **DENIED IN PART** and **GRANTED IN PART**. April Tinsley's Motion to Dismiss is **GRANTED** with respect to Plaintiffs' conspiracy claim, and such claim is **DISMISSED WITH PREJUDICE**. April Tinsley's Motion to Dismiss is **DENIED** in all other respects.

---

[19] The Affidavits reflect that Investigator Herb Bennett with the Lowndes County Sheriff's Office put Robert Hutson in contact with Van Lannen and NICB for assistance with the investigation of the stolen Silverado purchased and then sold by Plaintiffs. (Doc. 40-4 at 6). And it was Investigators Jimmy Catoni and Robert Woeller with the Moultrie Police Department who met with and had discussions with Van Lannen regarding the altered VIN on the subject Silverado. (*Id.* at 6–7). Investigator Bennett subsequently contacted Sheriff Tinsley and provided him with a copy Robert Hutson's police report filed with the Moultrie Police Department.

2.      Defendant Sheriff Tinsley's Motion to Dismiss (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**. Sheriff Tinsley's Motion to Dismiss is **GRANTED** with respect to Plaintiffs' § 1983 claim against Sheriff Tinsley, in his official capacity, and with respect to Plaintiffs' conspiracy claim and such claims are **DISMISSED WITH PREJUDICE**. Sheriff Tinsley's Motion to Dismiss is **DENIED** in all other respects.

3      Plaintiffs' § 1988 claim for attorney's fees against Sheriff Tinsley, in his official capacity, is **DISMISSED WITH PREJUDICE AS MOOT**.

4.      Defendant NICB's Motion to Dismiss (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART**. NICB's Motion to Dismiss is **GRANTED** with respect to Plaintiffs' claims for negligence, gross negligence, and conspiracy and such claims are **DISMISSED WITH PREJUDICE**. NICB's Motion to Dismiss is **DENIED** in all other respects.

5.      Plaintiffs' following claims remain:

a.       Section 1983 Claim for Violation of Plaintiffs' Fourth and Fourteenth Amendment Rights against April Tinsley and Sheriff Tinsley in their Individual Capacities;

b.      Claims for Intentional Infliction of Emotional Distress and Trespass against all Defendants;

c.      Section 1988 Claim for Attorney Fees against April Tinsley and Sheriff Tinsley in their Individual Capacities;

d.      Claim for Attorney Fees against All Defendants Pursuant to Georgia Code § 13-6-11; and

e.      Claim for Punitive Damages against All Defendants.


**SO ORDERED**, this 31st day of March 2025.

/s/W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**