**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **JOHN ANDROS, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NATIONAL INSURANCE CRIME BUREAU INC.,**<br><br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CASE NO:**<br>**7:23-cv-135–WLS** |

**ORDER**

This case arose out of the execution of three criminal search warrants for properties owned by Plaintiffs John and/or Julie Andros (together the "Androses"). Before the Court is Defendant National Insurance Crime Bureau's ("NICB") Motion for Summary Judgment (Doc. 154) ("Summary Judgment Motion") filed January 23, 2026. Plaintiffs filed a brief in opposition to the Summary Judgment Motion (Doc. 164) to which NICB replied (Doc. 169). Specifically relevant to this matter are the actions and communications of NICB's employee, Special Agent Trent Van Lannen ("Van Lannen") in relation to the issuance of the three search warrants and Van Lannen's actions and communications during the August 28, 2023 execution of the search warrant on Plaintiff Kings Parkway, LLC d/b/a 67 Motors ("67 Motors").

After review and as discussed more fully below, the Summary Judgment Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. PROCEDURAL BACKGROUND

On December 6, 2023, Plaintiffs, John Andros and his wife, Julie Andros, 67 Motors, and Ideal Transport, LLC ("Ideal Transport") filed a complaint (Doc. 1) against Deputy Sheriff April Tinsley ("April Tinsley"), Stephen Tinsley ("Sheriff Tinsley"), the Sheriff of Clinch County, Georgia, and NICB. Sheriff Tinsley and April Tinsley are husband and wife and are referred to collectively as the "Tinsley Defendants." On June 12, 2024, Plaintiffs filed the operative Third Amended Complaint (Doc. 40), in which they allege 1983 Civil Rights Actions against the Tinsley Defendants and allege various state law claims against the Tinsley

Defendants and NICB arising out of the issuance and execution of the three search warrants. The claims against NICB are based on the alleged actions of its employee, Van Lannen.

Defendants' motions to dismiss were resolved by an Order (Doc. 103) entered March 31, 2025. On April 10, 2025, the Tinsley Defendants filed a Notice of Appeal (Doc. 107) seeking appellate review of the denial of qualified immunity. Subsequently the Plaintiffs' claims against the Tinsley Defendants were settled in full, the interlocutory appeal was dismissed, and the Tinsley Defendants were dismissed from this case. (*See* Docs. 143, 146, 147, 148). After resolution of NICB's motion to dismiss, the following claims remain pending against NICB:

a. Claims for Trespass to Personalty and Realty,

b. Claim for Intentional Infliction of Emotional Distress,

c. Claim for Attorney Fees Pursuant to Georgia Code § 13-6-11, and

d. Claim for Punitive Damages.

NICB's Summary Judgment Motion was filed on January 23, 2026, and has been fully briefed. Also on January 23, 2026, NICB filed a motion to exclude the testimony of Plaintiffs' expert, Gary Vowell ("Vowell"). (*See* Doc. 153). After the motion to exclude was fully briefed, a hearing on the Summary Judgment Motion and the motion to exclude Vowell's testimony was held May 26, 2026. On June 4, 2026, an Order (Doc. 178) was entered denying NICB's motion to exclude. The Summary Judgment Motion is now ripe for resolution.

## II. FACTUAL BACKGROUND

The following facts are derived from the Complaint and NICB's statements of undisputed material facts for which Plaintiffs' responses thereto reflect there is no genuine issue of fact to be tried.[1] Where relevant, the factual summary also contains undisputed facts derived from the Record in this case including the pleadings, the discovery materials on file, and any affidavits or depositions submitted, all of which are construed in a light most favorable to Plaintiffs as the nonmoving parties. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

---

[1] References to Doc. 164-17 are to statements contained in Plaintiff's response to NICB's statement of undisputed material facts (Doc. 154-2) to which Plaintiffs specifically state they have no dispute.

As noted, this case arose out of criminal search warrants for three properties owned by the Androses: their residence; the office and real estate on which 67 Motors is located ("67 Motors Premises"); and the office and real estate on which Ideal Transport is located.[2] The applications for the search warrants were supported by three affidavits signed by April Tinsley. Van Lannen testified that he never met with or spoke to either April Tinsley or Sheriff Tinsley prior to execution of the search warrants.[3] However, April Tinsley's affidavits and the search warrants included information obtained either directly or indirectly from Van Lannen.

As noted above, NICB is the only remaining Defendant and its employee, Special Agent Van Lannen, was present only for the search conducted at 67 Motors. Thus, only that search is relevant to the Motion currently before the Court. Plaintiff John Andros is the sole owner of the real property on which 67 Motors operates.[4] Therefore, all references to the Warrant or the Affidavit in support of the Warrant refer to the documents relating to the search of 67 Motors.[5]

There is no dispute that Van Lannen is not a law enforcement officer, but a private citizen. However, he has specialized knowledge in identifying fake Vehicle Identification Numbers ("VIN") and he was involved in the search of the 67 Motors Premises.[6] Therefore, additional facts on why and how he was involved in the execution of the Warrant and what actions he took during that search are necessary.

In May 2023, 67 Motors purchased at auction a used 2020 Chevrolet Silverado pickup truck (the "Silverado"), held it for three months, and then placed it for sale with South Georgia Auto Auction in Albany, Georgia.[7] On June 30, 2023, the Silverado was purchased by Robert Hutson Ford ("Hutson Ford").[8] Robert Hutson of Hutson Ford later noticed the Silverado's VIN appeared to have been tampered with and alerted Investigator Herb Bennett ("Bennett") with the Lowndes County Sheriff's Office.[9] Bennett contacted Van Lannen to assist with

---

[2] Doc. 164-17 at 1; see also search warrants Docs. 40 3, 40 5, 40 7.

[3] Van Lannen Dep. 11:10–15; 86:2–9, July 3, 2024, ECF No. 164-18 [hereinafter "Van Lannen Dep. ___"].

[4] Doc. 164-17 at 2.

[5] *See* Docs. 40-5 (67 Motors Search Warrant); 40-6 (Affidavit in support of 67 Motors Search Warrant).

[6] Doc. 164-17 at 2–3.

[7] Doc. 103 at 5.

[8] Doc. 164-4 at 6.

[9] *Id.*

resolving the issue of the Silverado's VIN.[10] With Van Lannen's assistance, it was determined that the Silverado's VIN had in fact been altered.[11] Van Lannen provided law enforcement with the Silverado's title history showing that it had been stolen on November 19, 2019, from Chevrolet of Smithtown in Suffolk County, New York, and had since gone through several auctions.[12] Van Lannen informed law enforcement that this was a typical tactic to make the transactions appear legitimate and less likely to rouse suspicions of fraud or theft.[13] This information was included in the Affidavit supporting the Warrant for 67 Motors.[14] 67 Motors purchased the Silverado without knowledge that the Silverado had been stolen.[15]

Used car dealers in Georgia are required to report, with certain exceptions, car sales/transfers within thirty days via an Electronic Title Registration System ("ETR"). Vehicles titled in a dealer's name are one of the exceptions to this reporting requirement. Georgia law provides that "a dealer who buys a vehicle and holds it for resale need not apply to the commissioner for a new certificate of title but may retain the certificate delivered to him." O.C.G.A. § 40-3-33. 67 Motors had not sold the Silverado to a private individual, and therefore, was not required to register the transfer of the title to the Silverado through the Georgia ETR system. Yet, April Tinsley stated in her Affidavit that:

> As of January 1, 2018, all used car dealers in Georgia are required to report *all* car sales/transfers within 30 days via the Electronic Title Registration System (ETR). A list of all vehicles sold by 67 Motors from July 19, 2022 through July 17, 2023 was obtained. Neither the correct VIN nor the altered VIN are documented on the ETR System Report.

(Doc. 164-4 at 11 (emphasis added)).

> While the mere possession of a document detailing an acquisition, transfer, transport, sale or disposition is not in itself evidence that Andros knowingly and willingly did such with the white 2020 Chevrolet Silverado 2500, VIN #1GC4YME70LF125606, the fact that Andros failed to transmit the sale to Georgia's Electronic Title Registration system is evidence that he knew the vehicle was likely stolen. Further, affiant [April Tinsley] believes that

[10] Doc. 164-17 at 3.

[11] Doc. 164-4 at 7.

[12] *See* Docs. 164-4 at 7, 164-17 at 3, 4.

[13] Doc. 164-4 at 7–8; Doc. 164-17 at 3.

[14] *See* Doc. 164-4.

[15] John Andros Dep. 74, Dec. 11, 2024, ECF No. 164-1 [hereinafter "John Andros Dep. II ___"].

documentation contained therein will likely indicate this was not an isolated incident.

(*Id.*). Van Lannen testified that he does not know what the ETR is or what the acronym stands for.[16]

Bennett requested that Van Lannen assist with the execution of the Warrant.[17] On the morning the Warrant was executed at 67 Motors, law enforcement held a briefing. Van Lannen was not present for the briefing.[18] He never read the Affidavit submitted in support of the Warrant.[19] When asked whether he read the Warrant, Van Lannen replied "[t]hat's not my function. No."[20] Rather, when he arrived at 67 Motors, he asked Bennett what Bennett wanted him to look at, and Bennett told him "[a]nything on the lot."[21]

Initially, the Androses were across the street from 67 Motors at the local courthouse.[22] From there, Mr. Andros watched "nine deputies swarming on [67 Motors] property."[23] The Androses did not go to the 67 Motors property but went to their home.[24] However, at least three 67 Motors employees, Rhett Barber ("Barber"), Tony Griffin ("Griffin"), and Tommy Montgomery ("Montgomery"), were present at the 67 Motors Premises when Van Lannen conducted his search of the VINs on the cars located on the 67 Motors lot.[25] Van Lannen never verbally identified himself as a law enforcement officer.[26] Nevertheless, every employee present believed Van Lannen was law enforcement because of his actions during the search.[27] Montgomery testified that Van Lannen had on a vest which Montgomery assumed was a bullet-proof vest.[28] Further, Van Lannen arrived with law enforcement, conducted vehicle

[16] Doc. 164-17 at 6.

[17] Van Lannen Dep. 10:11–16; 23:15–17.

[18] *Id.* 44:13–25.

[19] *Id.* 6:18-20.

[20] *Id.* 6:2–9.

[21] *Id.* 25:10-26:9.

[22] Doc. 164-17 at 6–7.

[23] *Id.* at 7.

[24] *Id.*

[25] Doc. 164-17 at 8.

[26] *Id.* at 10.

[27] Barber Dep. 19:11–20:19, Dec. 20, 2024, ECF No. 164-15 [hereinafter "Barber Dep. ___"]; Griffin Dep. 18–19, 23, 30, Dec. 20, 2024, ECF No. 164-14 [hereinafter "Griffin Dep. ___"]; Montgomery Dep. 12–16, 18, Dec. 20, 2024, ECF No. 164-16 [hereinafter "Montgomery Dep. ___"].

[28] Montgomery Dep. 12:22–25.

inspections alongside officers executing a warrant, directed employees to hand over keys,[29] looked inside some vehicles, looked under vehicles and in the trunks of vehicles.[30] He also inspected the personal vehicles of two of the employees.[31] Van Lannen spent hours on the property without identifying himself as a private citizen.

Subsequent to the search, on October 5, 2023, Judge Clayton Tomlinson of the Superior Court of Clinch County, Georgia, who originally signed the Warrant, entered an Order to Quash Search Warrants, Suppress Evidence and Return Seized Property (Doc. 154-9) ("Order Quashing Warrants") in which he stated.

> The Defendants [Plaintiffs here] allege the Search Warrants were issued based on information that did not provide probable cause. The Court must agree.
>
> Here, this Court finds the Affidavit contained a conclusory statement based on a misstatement of the law – "**the fact that Andros failed to transmit the sale to Georgia's Electronic Title Registration system is evidence that he knew the vehicle was likely stolen.**" A review of the law shows that a dealer who buys a vehicle and holds it for resale does not need to apply to the commissioner for a new certificate of title, but may retain the certificate delivered to the dealer. See O.C.G.A. § 40-3-33. Therefore, in this case, 67 Motors was not required to apply for a new title for the vehicle in question, and therefore was not required to transmit the sale to Georgia's Electronic Title Registration system as stated in the Affidavit.
>
> . . . .
>
> a. This Court finds that the Affidavit contained insufficient information to allow a finding of probable cause to issue the Search Warrants, as such, [Plaintiffs'] Motion to Suppress is HEREBY GRANTED in its entirety, and the Search Warrants are quashed.
>
> b. The seizure of the property occurred without probable cause and any evidence resulting from the searches is hereby excluded from any further criminal proceedings.

---

[29] Van Lannen asked Griffin for two sets of vehicle keys, and Griffin complied with the request. ((Doc. 164-17 at 9).

[30] Barber and Griffin observed Van Lannen being in the lot "for hours, climbing underneath and on top of vehicles to inspect them." (Doc. 164-17 at 8). Griffin asked Van Lannen directly what he was doing, and Van Lannen responded that he was checking every car on the lot. ((Doc. 164-17 at 9).

[31] Barber observed Van Lannen evaluate Barber's personal truck. Barber said to Van Lannen "Hey, that's my truck. That's my personal truck," at which point Van Lannen walked around the truck and moved on. (Doc. 164-17 at 8; Barber Dep. 18:16-22). Griffin also observed Van Lannen checking the VIN on Barber's truck and attempting to open the door to Barber's truck. (Griffin Dep. 25:6–26:1). Montgomery observed Van Lannen check the VIN of his personal vehicle through the vehicle's windshield. (Montgomery Dep. 15:13–15).

Order Quashing Warrants at 2–3 (emphasis in original). Thereafter, Plaintiffs filed this action against NICB and the Tinsley Defendants.

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (per curiam) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet that burden

by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings and by [nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587−88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**B. Local Rule 56**

Local Rule 56 requires the following:

> The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine dispute to be tried. Each material fact shall be numbered separately and shall be supported by specific citation to particular parts of materials in the record. . . .
>
> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. The Parties complied with the Federal Rules of Civil Procedure and the Local Rules by filing a timely motion for summary judgment, response and reply thereto, and attaching separate and concise statements of material facts and responses thereto.

## IV. Plaintiffs' Claims for Trespass

NICB argues that Van Lannen's involvement in this case is limited to two days: (1) his inspection of the VIN on the Silverado at Hutson Ford and his confirmation that the VIN had been altered on July 14, 2023, and (2) his inspection of the VINs on the vehicles located at 67 Motors on August 28, 2023.[32]

Plaintiffs' claims of trespass to personalty and trespass to realty against NICB are based on Van Lannen's actions at 67 Motors. NICB contends, and Plaintiffs do not contest, that because John Andros is the sole owner of 67 Motors, that only he and 67 Motors have standing to bring an action for trespass or injury to realty. (Doc. 154-1 (quoting *James v. Riley*, 182 S.E. 604, 604 (Ga. 1935) ("[t]o maintain an action for trespass or injury to realty, it is essential that the plaintiff show either that he was the true owner or was in possession at the time of the trespass.")).

NICB contends that Van Lannen's involvement on the 67 Motors property was limited to inspecting the exterior VINs of roughly fifteen vehicles on the property, and briefly opening the door of one vehicle to view the VIN.[33] Plaintiffs assert Van Lannen's involvement was much more extensive. They contend the record shows Van Lannen climbed underneath vehicles, got on top of them, ran VINs through his computer, requested and obtained vehicle keys from an employee, and even approached an employee's personal truck, and he spent hours doing so.[34] Plaintiffs argue that this was an extensive, unauthorized search of approximately fifteen vehicles. There is also testimony indicating that Van Lannen entered the 67 Motors office and that he was not out on the lot the entire time he was at 67 Motors.[35]

### A. Claims for Trespass to Personalty

Plaintiffs bring trespass personalty claims under O.C.G.A. §§ 51-10-1, and 51-10-2. Both § 51-10-1 and § 51-10-2 relate to personal property or chattel rather than real estate.

---

[32] Doc. 154-1 at 4.

[33] Van Lannen Dep. 41, 72, 88, 90; Barber Dep. 18; Griffin Dep. 22; Montgomery Dep. 18-19.

[34] Barber Dep. 18:16–22, 20:6–19; Griffin Dep. 17–19, 22.

[35] Barber Dep. 34:12–35:6; Van Lannen Dep. 39:20–40:8; Doc. 164-17 at 9–10.

1. Plaintiffs failed to offer sufficient evidence to create a genuine issue of material fact to support their claims for trespass to personal property pursuant to O.C.G.A. § 51-10-1.

In Georgia, claims for conversion may be brought under O.C.G.A. § 51-10-1 which provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." To succeed on a conversion claim, "Plaintiff must show (1) that it had title to the property or the right of possession; (2) that the other party was in actual possession of the property; (3) that it demanded the return of the property; and (4) that the other party refused to return the property." *DirecTV, LLC v. Shirah*, No. CV413-110, 2014 WL 1002778, at *2 (S.D. Ga. Mar. 12, 2014) (citing *Johnson v. First Union Nat'l Bank,* 567 S.E .2d 44, 48 (Ga. Ct. App. 2002).

NICB contends that Van Lannen never seized any object of any kind from the property, including from within the building or the vehicles. Van Lannen's testimony supports this contention. Van Lannen Dep. 90–18:91–9 (Van Lannen did not remove anything, including any documents, from the 67 Motors' premises). Plaintiffs merely provided evidence that Van Lannen was seen entering 67 Motors' office and some of the vehicles on the lot. They were unable to provide any evidence showing that Van Lannen removed any personal property from 67 Motors' office or premises. John Andros testified that he "wouldn't know" if Van Lannen actually took something from a vehicle, as this conclusion could only be reached if he had an inventory of the vehicle contents prior to and after Van Lannen's inspection of the property.[36] Regardless, Plaintiffs contend that Van Lannen's role in the process lead to the unlawful seizure of materials from 67 Motors.[37] Plaintiffs offer no support for this conclusory statement.

The fact that John Andros and 67 Motors employees saw Van Lannen enter the 67 Motors office and various vehicles is not evidence that Van Lannen took any personal items from either the office or the vehicles. Plaintiffs offered no evidence that they, or any of their employees, saw Van Lannen take possession of any of Plaintiffs' personal property. Thus, no reasonable jury could find that Van Lannen removed any personal property from 67 Motors. Plaintiffs failed to point to evidence that Van Lannen was in actual possession of any of

[36] John Andros Dep. 203:8-11, Nov. 7, 2024, ECF No. 164-10 [hereinafter "John Andros Dep. I ____"].

[37] Doc. 164-17 at 10–11.

Plaintiffs' property, that Plaintiffs demanded return of any identified property from NICB or Van Lannen, or that Van Lannen or NICB refused to return any identified property.

Accordingly, NICB is entitled to summary judgment as to Plaintiffs' claims against it for trespass to personalty under O.C.G.A. § 51-10-1.

2. Plaintiffs presented sufficient evidence to create a genuine issue of material fact to support their claims for trespass to personal property pursuant to O.C.G.A. § 51-10-2.

Plaintiffs' second claim against NICB for trespass to personalty arises under O.C.G.A. § 51-10-2 which provides that "[i]nterference with the mere possession of a chattel, even if the possession is without title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession."

> The underlying causes of action for this statute [§ 51-10-2] are conversion and trover, as well as trespass. The action of trespass to personalty is concurrent with the action of conversion, although the two actions are not entirely coextensive. Trespass will doubtless lie for acts of interference with goods. The gist of trespass to personal property is the injury done to the possession of the property.

*Daughtry v. Manning*, No. CV 2:20-005, 2021 WL 1202071, at *4 (S.D. Ga. Mar. 30, 2021) (alterations adopted) (internal citations and quotations marks omitted). With respect to Plaintiffs' claim for trespass to personalty NICB's only arguments are that "[i]t is ***undisputed that Van Lannen never seized any moveable object from Plaintiffs***. All Van Lannen did at 67 Motors was visually inspect vehicles for the purpose of checking VINs."[38] Unlike trespass to personalty under § 51-10-1, NICB has not met its initial burden to show that there is no genuine dispute as to any material fact with respect to Plaintiffs' claim under § 51-10-2. Specifically, as discussed more fully below,[39] there are genuine issues of material fact as to whether Van Lannen's actions in inspecting the vehicles (personal property), climbing in, on and around such vehicles, and taking the keys to two of the vehicles constitutes "interference with the mere possession of a chattel" within the meaning of § 51-10-2.

Based on the Record in this case, the Court finds that Plaintiffs have presented Record evidence showing that a genuine dispute of material fact exists which if proved as alleged by Plaintiffs and believed by a jury, could result in a finding that Van Lannen interfered with

---

[38] Doc. 154-1 at 10 (emphasis in original).

[39] *See infra* Part IV.B.2.b.

Plaintiffs' vehicles located on the 67 Motors Premises. Accordingly, NICB is not entitled to summary judgment as to Plaintiffs' claims against it for trespass to personalty under O.C.G.A. § 51-10-2.

**B. Claim for Trespass to Realty**

1. <u>Plaintiffs presented sufficient evidence to create a genuine issue of material fact to support their claims for trespass to real property against NICB</u>.

O.C.G.A. § 51-9-1 provides that "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."

> Under Georgia law, every citizen has the right of enjoyment of private property, and every act of another which unlawfully interferes with such enjoyment is an actionable tort. O.C.G.A. § 51–9–1. A trespasser is one who knowingly and without authority enters upon the land of another after receiving prior notice that entry is forbidden. *Pope v. Pulte Home Corp.*, 246 Ga. App. 120, 539 S.E.2d 842, 843–44 (2000). For a plaintiff to raise a claim for trespass under § 51–9–1, they must show that the trespasser refused to leave the house or realty after being asked to leave or that they interfered with the plaintiff's possessory interest in the realty.

*Goia v. CitiFinancial Auto*, 499 F. App'x 930, 936–37 (11th Cir. 2012). To succeed on their trespass to realty claim, Plaintiffs must show (1) that Van Lannen was not authorized to be present at 67 Motors' premises; (2) that he knew he was not authorized to enter the premises; and (3) that he refused to leave when asked or that he interfered with Plaintiffs' possessory interest in the realty. However, "an unintentional and nonnegligent entry onto another's land does not automatically subject an individual to liability even though the entry causes harm to the possessor." C. *W. Matthews Contracting Co. v. Wells*, 249 S.E.2d 281, 282 (Ga. Ct. App. 1978) (finding defendant was an innocent trespasser when he was "following plans and specifications furnished to him by the governmental authority which showed that the property involved in the construction of this road was within the state's right-of-way"); *see also KSSR Props., LLC v. Bellsouth Telecomms., LLC*, No. 21-12873, 2022 WL 4375069, at *3 (11th Cir. Sept. 22, 2022) (per curiam) (citing *C. W. Matthews* and finding that defendant was an innocent trespasser when it relied on city and county documents to locate right of way when it installed an underground fiber optic conduit outside of the right-of-way). "Under Georgia law, a trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by

another. Although Georgia law recognizes the doctrine of the innocent trespasser, whether a trespass was willful or innocent is generally for the jury to decide." *Lee v. S. Telecom Co.*, 694 S.E.2d 125, 128 (Ga. Ct. App. 2010). "But where the evidence demands the conclusion that a party did not commit a willful trespass, courts have granted summary judgment on the question." *KSSR Props.*, 2022 WL 4375069, at *3 (cleaned up).

2. Analysis of Plaintiffs' Trespass to Realty Claim

NICB contends that it is not liable for trespass based on Van Lannen's actions at 67 Motors because Van Lannen was present at 67 Motors at the request of law enforcement who were authorized at the time to execute a facially valid Warrant. Plaintiffs contest that Van Lannen's presence was authorized by the Warrant. NICB contends that even if Van Lannen cannot rely on the Warrant for authorization, Plaintiffs' trespass claim still fails because Van Lannen was never asked to leave the premises, never refused to leave the premises, and never interfered with the possession of 67 Motors' property. Finally, NICB argues that even if Van Lannen was a trespasser, he was an innocent trespasser because he understood the Warrant to be valid and lawful. Therefore, his presence at 67 Motors was unintentional and non-negligent.

The Court reviews each of these arguments in turn.

*a. Plaintiffs offered sufficient evidence to create a genuine issue of material fact as to whether the Warrant authorized Van Lannen to be on the 67 Motors property.*

NICB contends that the Warrant authorized him to be on the 67 Motors Premises. Plaintiffs make two arguments as to why the Warrant did not provide authority for Van Lannen to be present at 67 Motors during the search. First, the Warrant was addressed only to "Investigator April Tinsley and/or other lawfully authorized peace officer of the State of Georgia."[40] It did not provide for the presence of any other people to be a part of the search. It is undisputed that Van Lannen was not specifically authorized by name to be present on the premises. Further it is undisputed that Van Lannen is not, and was not at the time, a lawfully authorized peace officer of the State of Georgia. Thus, the Warrant did not specifically authorize Van Lannen's presence on the 67 Motors Premises, including the office.

NICB next contends that Van Lannen was at the 67 Motors Premises at the request of and to assist law enforcement officers pursuant to the Warrant. Van Lannen's own testimony limited his authorized access to the lot inspecting vehicles. Nothing in the Record authorized

[40] Doc. 154-4 at 3.

Van Lannen to enter the 67 Motors office. Further, Plaintiffs argue the Warrant was quashed. As NICB notes, this Court previously found that even assuming it was appropriate for Van Lannen to accompany law enforcement "in the execution of a search warrant to identify stolen property, NICB has not provided authority that a third person accompanying officers would be entitled to any more protection based on a warrant issued without probable cause (or arguable probable cause) than the officers."[41] As discussed below,[42] NICB now unsuccessfully attempts to distinguish Van Lannen from the Tinsley Defendants by asserting that Van Lannen was an innocent trespasser.

*b.* *Plaintiffs offered sufficient evidence to create a genuine issue of material fact as to whether 67 Motors' employees reasonably believed Van Lannen was lawfully on the property and/or that Van Lannen interfered with 67 Motors' possessory interest in the property*.

Under O.C.G.A. § 51-9-1, "[t]he term 'property' includes not only the land possessed, but also the rights of the owner in relation to that land. The owner has the rights to possess, use and dispose of the property and the corresponding right to exclude others from using the property." *Pope*, 539 S.E.2d at 843 (footnotes omitted). Plaintiffs John Andros and 67 Motors used the property as a used car lot.

It is undisputed that no one asked Van Lannen to leave the 67 Motors' premises. Nevertheless, Plaintiffs argue that it is not reasonable to expect that any of the employees would request that Van Lannen leave the premises because Van Lannen held himself out as a law enforcement officer, and every employee at 67 Motors reasonably believed he was law enforcement. Van Lannen spent hours on the property without identifying himself as a private citizen or clarifying that he was not law enforcement. Montgomery testified that Van Lannen had on a vest which Montgomery assumed was a bullet-proof vest. Van Lannen arrived with law enforcement, proceeded to conduct vehicle inspections alongside officers executing a warrant, directed employees to hand over keys, looked inside some vehicles, looked under vehicles and in the trunks of vehicles. He also inspected the personal vehicles of two of the employees. Given Van Lannen's apparent authority, none of the employees believed they could question his presence or ask Van Lannen to leave.

---

[41] Doc. 103 at 38.

[42] *See infra*, Part IV.B.2.c.

NICB argues that Van Lannen never identified himself as a police officer. That is undisputed. But actions can speak louder than words. A review of the evidence in the Record could support the fact finder finding that Van Lannen presented himself as an officer or allowed himself to be believed to be an officer and did not do anything to correct the fact or representation or any misunderstandings as to his identity and authority to be on the property.

NICB also argues that Van Lannen did not interfere with Plaintiffs' possessory interest in the property on which 67 Motors is located. However, material issues of fact exist as to whether the hours Van Lannen spent on the property inspecting 67 Motors' vehicles, climbing in, on and around such vehicles, taking the keys to two of the vehicles, and being present in the office of 67 Motors where there were no cars for him to inspect, constitute interference is a question for a jury.

*c. Plaintiff's offered sufficient evidence to create a genuine issue of material fact as to whether Van Lannen was an innocent trespasser.*

NICB argues that even if Van Lannen was a trespasser, he was an innocent trespasser because he believed the warrant gave him the right to be on 67 Motors' property. However, unless the "evidence demands the conclusion that a party did not commit a willful trespass" *KSSR Props.*, 2022 WL 4375069, at *3, the question of "whether a trespass was willful or innocent is generally for the jury to decide" *Lee*, 694 S.E.2d at 128. Here, Van Lannen failed to attend the briefing or to read the Affidavit or the Warrant on which he relied for his authority to enter onto 67 Motors' property. He inspected the VINs of multiple vehicles without first determining whether such vehicles were owned by 67 Motors or third parties. He entered the 67 Motors' office—which action was not authorized by either the Warrant or Bennett's instructions as to the actions Van Lannen was to perform.

NICB cites several cases standing for the proposition that if a trespasser relies on documents provided by the government and such documents are incorrect, then the trespasser is an innocent trespasser and not liable for damages. In those cases, the trespasser reviewed or read the documents on which the trespasser was relying for authority. In *C. W. Matthews*, a road contractor was found to be an innocent trespasser where he "adhered to plans furnished by the Georgia Department of Transportation" and it "turned out the DOT plans were wrong." 249 S.E.2d at 282. Obviously, the road contractor could not have "adhered" to the plans without having read such plans. In *KSSR Properties*, the Eleventh Circuit found that

defendant was an innocent trespasser when defendant used county and city data to verify the location of a right of way when it installed an underground fiber optic conduit outside of the right-of-way. 2022 WL 4375069, at *3 (citing *C. W. Matthews*).

It is possible that under these facts a jury may find that Van Lannen cannot, under the totality of the circumstances, validly claim to be an innocent trespasser. Particularly, where he points to no Record evidence permitting him to enter the office and where he stated it was not his "function" to read the Warrant on which he relied for authorization to be on the 67 Motors Premises to inspect vehicles.

3. <u>Conclusion as to Plaintiffs' Claim for Trespass to Realty</u>

Based on the foregoing, the Court finds that Plaintiffs have pointed to Record evidence showing that a genuine dispute of material fact exists which if proved as alleged by Plaintiffs and believed by a jury, could result in a finding that Van Lannen willfully trespassed upon the premises on which 67 Motors is located. Accordingly, NICB is not entitled to summary judgment as to Plaintiffs' claims against it for trespass to realty under O.C.G.A. § 51-9-1.

## V. PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

It appears that Plaintiffs only assert a claim of intentional infliction of emotional distress ("IIED") against NICB as to John Andros. To recover for IIED under Georgia law, a plaintiff must prove: (1) that the defendant engaged in intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that there is a causal connection between the wrongful conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress was severe. *Yarbray v. S. Bell Tel. & Tel. Co.*, 409 S.E.2d 835 (Ga. 1991). Plaintiff's burden to show IIED under Georgia law is exceptionally heavy. In Georgia, conduct giving rise to a claim for IIED "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cornelius v. Auto Analyst, Inc.*, 476 S.E.2d 9, 11 (Ga. Ct. App. 1996) (internal quotation marks omitted). "Whether a claim rises to the level of extreme and outrageous conduct necessary to support a cause of action for the intentional infliction of emotional distress is a question of law." *Cottrell v. Smith*, 788 S.E.2d 772, 780 (Ga. 2016).

John Andros testified to an inability to work for weeks, a fundamentally changed relationship with law enforcement, ongoing stress, embarrassment, humiliation, ongoing sleep

disturbances, and anxiety resulting from the searches.[43] Plaintiffs state the psychological impact affected John Andros's ability to work. He testified he "wasn't in the mental shape" to conduct business.[44] For weeks, he could barely respond to customer calls.[45] Plaintiffs contend that Van Lannen's actions in "cloaking" himself in police authority and participating in the search in such capacity is outrageous. The Court notes that Georgia law holds that "[a] person who falsely holds himself or herself out as a peace officer, officer of the court, or other public officer or employee with intent to mislead another into believing that he or she is actually such officer commits the offense of impersonating an officer." Ga. Code Ann. § 16-10-23.

Further, Plaintiffs contend that Van Lannen went beyond Bennett's initial request to determine whether the Silverado had a VIN which had been changed and whether the Silverado was stolen. Van Lannen, as an expert, went on to "explain[ ] that what normally happens is criminals create fake paperwork showing the vehicle has been through several auctions making things look legitimate."[46] Plaintiffs contend that Van Lannen knew the Silverado had been stolen from Suffolk County, New York, on November 19, 2019.[47] Plaintiffs assert that this statement, which became part of the Affidavit supporting the Warrant, implicated 67 Motors and John Andros, as its owner, as being part of the fraudulent scheme.[48]

Plaintiffs contend Van Lannen's actions were outrageous in that his statements implicated innocent persons in a stolen car theft ring and then he cloaked himself with the authority of a law enforcement officer and participated in the search of 67 Motors Premises.

Based on the foregoing, the Court finds that Plaintiffs have pointed to Record evidence showing that a genuine dispute of material fact exists which if proved as alleged by Plaintiffs and believed by a jury, could result in a finding that Van Lannen actions caused John Andros to suffer severe emotional distress. Accordingly, NICB is not entitled to summary judgment as to Plaintiffs' claim against it for intentional infliction of emotional distress.

---

[43] John Andros Dep. I 147–49.

[44] John Andros Dep. II 204–05.

[45] *Id* 203–04.

[46] Van Lannen Aff. ¶ 10, Apr. 28, 2025, ECF No. 154-5.

[47] *Id.* ¶ 6.

[48] Doc. 164-17 at 4.

## VI. Attorney Fees and Punitive Damages Claims

NICB contends that if the Court grants summary judgment as to Plaintiffs' substantive claims against it, then Plaintiffs' derivative claims for attorney fees and punitive damages fail as a matter of law. Where the Court has not granted summary judgment as to all of Plaintiffs' substantive claims, NICB is not entitled to summary judgment as to Plaintiffs' derivative claims for punitive damages and attorney fees.

## VII. Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 154) is **GRANTED IN PART** and **DENIED IN PART**.

Defendant National Insurance Crime Bureau's Motion for Summary Judgment (Doc. 154) is **GRANTED** with respect to Plaintiffs' claim for Trespass to Personalty under O.C.G.A. § 51-10-1 against NICB, and that claim is **DISMISSED WITH PREJUDICE**.

NICB's Motion for Summary Judgment (Doc. 154) is **DENIED** with respect to Plaintiffs' claims for Trespass to Personalty under O.C.G.A. § 51-10-2, Trespass to Realty under O.C.G.A. § 51-9-1, Intentional Infliction of Emotional Distress, Attorney Fees, and Punitive Damages.

Further, with the resolution of NICB's Motion for Summary Judgment, the Court expects this matter to be ready for trial during the Court's February 2027 Trial Term beginning February 1, 2027. Accordingly, at the appropriate time, a notice and order to prepare and submit a proposed pretrial order will be issued by separate order.

**SO ORDERED**, this 30th day of September 2026.

**/s/W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**